William A. KINNIE, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–1690.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1993.

Decided May 24, 1993.

George M. Malis (argued & briefed), Timmis & Inman, Detroit, MI, for plaintiff-appellant.

Mark D. Lansing, Trial Atty., Gary R. Allen, Acting Chief (briefed), Richard Farber, Samuel R. Lyons (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for defendant-appellee.

Before: KENNEDY, MILBURN, and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiff William A. Kinnie appeals the district court's grant of summary judgment in favor of defendant United States of America in Kinnie's action seeking recovery of penalties assessed and collected by the Internal Revenue Service ("IRS") under 26 U.S.C. § 6672. On appeal, the issues are (1) whether Kinnie was a responsible person who willfully failed to pay to the United States income and social security taxes withheld from the wages of the employees of the business in which Kinnie owned fifty percent and was the vice-president, (2) whether the district court erred when it entered judgment against Kinnie for an amount that exceeded the cash on hand of the corporation on the date that Kinnie acquired notice that the corporation had not been paying or remitting withholding and social security taxes to the IRS, and (3) whether the district court correctly held that the IRS was authorized to

allocate his business employment tax payment between the trust fund portion and non-trust fund portion of the corporation's employment tax liability in the manner in which the government deemed to be in the best interests of the United States, in the absence of a written designation by the corporation as to how its payments should be applied. For the reasons that follow, we affirm.

## I.

### A.

■ In reviewing a motion for summary judgment, we must consider the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). Therefore, the facts set forth below are those most favorable to plaintiff Kinnie.

Kinnie and Robert M. Blinstrub formed a corporation, Eastern Michigan Truck Sales, Inc. ("EMTS"), in 1982. The business purpose of the corporation was to lease and service new and used trucks. The corporation operated under franchise or dealer agreements with Mercedes–Benz, Freightliner, Inc., and later with Isuzu Trucks. Blinstrub was president and Kennie was vice-president. Barbara Bertollini was later hired by Blinstrub as secretary and treasurer. Blinstrub and Kinnie, investing equal amounts of money, were each 50 percent owners and agreed that the corporation would be run as a 50/50 partnership. Blinstrub, as general manager, ran the company on a day-to-day basis. Kinnie contends that he was only an investor and that as such his only interest in the corporation was to get the return on his investment.

Beginning in 1985, EMTS began failing to pay to the IRS all the federal income and Federal Insurance Contributions Act ("FICA") or social security taxes which it withheld from the wages of its employees. Under 26 U.S.C. § 7501 these withheld employee taxes are deemed to be held in a trust fund for the United States. The delinquencies appeared on both the year-end financial reports and the monthly financial reports sent to Mercedes–Benz, copies of which were provided to Blinstrub. According to Blinstrub, the payroll taxes were not paid so that the business might continue operations, and it was anticipated that sufficient funds would be available in the future to pay the tax liability.

Kinnie testified in his deposition that he first learned of the unpaid payroll taxes in August or September of 1986. As of September 1986, EMTS had unencumbered assets of $27,601.86. Kinnie admits that he knew the corporation was required to pay withholding taxes, but he assumed that Blinstrub was taking care of the taxes. He testified that when he learned that EMTS had not paid the taxes, he requested that Blinstrub and the corporation's accountant, William Thompson, meet with the IRS. In a November 1986 meeting with the IRS, Kinnie personally guaranteed a loan for $100,000 to pay the delinquent taxes. In his deposition, accountant Thompson testified that he orally directed the IRS to apply 100 percent of the $100,000 to the trust fund portion of the delinquent taxes.

In late 1986, Kinnie directed an accountant to review the corporate records for possible diversion of corporate funds by Blinstrub for personal and other improper use and directed Bertollini to make the corporate records available to the accountant. In February 1987, the $100,000 was paid to the IRS; however, the IRS applied only approximately 50 percent to the trust fund portion of the back taxes instead of 100 percent as orally directed by Thompson and applied approximately 50 percent to the non-trust fund portion of the back taxes owed.

In March 1987, Kinnie forced Blinstrub to leave the management of the corporation, allegedly because lenders refused to provide capital to EMTS as long as Blinstrub was associated with EMTS. After Blinstrub left, Kinnie authorized each check that was made by EMTS to its creditors. Kinnie used his personal funds to pay creditors, payroll, and, at times, the IRS. He also obtained personal loans to pay creditors and payroll. Kinnie

closed EMTS in May 1987 because Mercedes–Benz and Freightliner refused to continue their dealerships with EMTS or any entity associated with Blinstrub.

Subsequently, Kinnie began a new corporation by the name of Great Lakes Freightliner, Inc. ("Great Lakes") which operated for the same business purpose, at the same address, with virtually the same employees and customers as that of EMTS. Great Lakes operated as a franchise or dealer for Mercedes–Benz and Freightliner. Kinnie was the sole owner of Great Lakes. The assets of EMTS, including its inventory, were taken over by Great Lakes, and before EMTS ceased to exist, it paid Great Lakes over $78,000. Great Lakes also used EMTS' Visa and Mastercard credit cards until it received cards issued in its name. In addition, Kinnie personally borrowed money which he used in incorporating Great Lakes; however, none of those borrowed funds were used to pay the tax liability. In addition, Great Lakes paid creditors, suppliers, and its payroll rather than the trust fund portion of taxes owed by EMTS. Kinnie knew of and allowed the payments to other creditors. Between August 1986 and July 1987 more than $500,000, an amount three times the funds necessary to pay the entire trust fund liability, passed through EMTS' and Great Lakes' bank accounts.

The IRS made a penalty assessment under 26 U.S.C. § 6672 against Kinnie for the unpaid federal income and social security taxes. This assessment included $137,892.76 for the last quarter of 1985, the first three quarters of 1986, and the second quarter of 1987. Kinnie paid a portion of the assessment against him and sought a refund and tax abatement from the IRS, which was denied.

**B.**

On March 16, 1990, Kinnie filed an action in the district court seeking a refund and tax abatement for the penalty of $137,892.76 assessed for the last quarter of 1985, the first

three quarters of 1986, and the second quarter of 1987. The IRS responded by filing a counterclaim seeking the balance of the assessment plus interest from Kinnie. The government then filed a motion for summary judgment which the district court granted in favor of the government in its memorandum opinion of August 7, 1991. 771 F.Supp. 842. The district court entered judgment against Kinnie on October 4, 1991, and ordered Kinnie to pay $84,559.06, the amount remaining of the delinquent trust fund taxes plus interest. Kinnie made a motion to reconsider which the district court denied on April 30, 1992, and this timely appeal followed.[1]

**II.**

**A.**

This court reviews a district court's grant of summary judgment de novo. *See Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). As previously stated, we must consider the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Boyd*, 948 F.2d at 285.

**B.**

The requirements for liability under 26 U.S.C. § 6672 are clearly set forth in *Gephart v. United States*, 818 F.2d 469 (6th Cir.1987) (per curiam). 26 U.S.C. §§ 3102 and 3402 require that employers withhold from the wages of their employees the employees' social security and federal income taxes. *Id.* at 472. As previously stated,

---

1. The IRS also assessed Blinstrub with a $133,-545.93 penalty and Bertollini with a $137,892.76 penalty for the last quarter of 1985, the first three quarters of 1986, and the second quarter of 1987. Blinstrub and Bertollini have both been

involved in this litigation, and summary judgment was entered against them by the district court in favor of the government. However, neither has appealed from that judgment.

these taxes are held in trust for the government and are referred to as "trust fund taxes." *Id.* The monies in the trust fund may not be used for any purpose other than to pay the employees' social security and federal income taxes. *Id.* 26 U.S.C. § 6672 provides that "any person" who willfully fails to account for and pay over its employees' withholding taxes shall be liable for the full amount not paid over to the government. *Id.* at 473.[2] 26 U.S.C. § 6671(b) defines "person" as "an officer or employee of the corporation . . . who as such officer or employee . . . is under a duty to perform the act in respect of which the violation occurs." *Id.*

■■■ Two requirements must be met before one can be liable under section 6672. The taxpayer must: (1) be a "responsible person" under the statute, and (2) have "willfully" failed to pay over the taxes due. *Id.* The taxpayer bears the burden of proving that he is not a responsible person under section 6672 and that he did not act willfully in failing to pay over the taxes. *McDermitt v. United States,* 954 F.2d 1245, 1251 (6th Cir.1992).

■■■ "It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." *Collins v. United States,* 848 F.2d 740, 741–742 (6th Cir.1988) (per curiam). The purpose of this statute is "to protect the government against losses by providing it with another source from which to collect the withheld taxes." *Gephart,* 818 F.2d at 473. "When net wages are paid to the employee, the taxes that were, or should have been, withheld are credited to the employee even if they are never remitted to the government; so the IRS has recourse only against the employer for their payment." *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.), *cert.*

*denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

■■■ Plaintiff Kinnie first challenges the district court's determination that he was a person responsible for the payment of withholding taxes under section 6672, arguing that a genuine issue of material fact exists as to his degree of involvement in the financial affairs of EMTS for the quarters at issue. Whether one is considered a person responsible for paying over such taxes to the government under section 6672 is a question "focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation, and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart,* 818 F.2d at 473. Factors which courts have examined in determining if a person is responsible for the payment of withholding taxes are:

(1) the duties of the officer as outlined by the corporate by-laws;

(2) the ability of the individual to sign checks of the corporation;

(3) the identity of the officers, directors, and shareholders of the corporation;

(4) the identity of the individuals who hired and fired employees;

(5) the identity of the individuals who are in control of the financial affairs of the corporation.

*Id.* (citations omitted).

■■■ Moreover, liability requires the existence of only significant as opposed to absolute control of the corporation's finances. *Id.* "Generally, such a person is one 'with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes,' or more explicitly, one who has 'authority to direct payment of creditors.' " *Id.* (citation omitted).

■■■ Kinnie argues that he was a mere passive investor seeking a return on his investment during the time at issue. He notes

---

2. 26 U.S.C. § 6672(a) provides in relevant part:

[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax,

or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded or not collected, or not accounted for and paid over.

that Blinstrub testified in his deposition to the contrary, stating that Kinnie consulted on a daily basis with him during all relevant quarters regarding what creditors to pay and that Kinnie knew as early as February 1986 of the tax deficiency. Nevertheless, even when disregarding Blinstrub's contradictory testimony, other uncontested facts exist which show that Kinnie was a "responsible person" under the statute. Kinnie does not dispute certain facts such as: he was a vice-president and 50 percent shareholder of EMTS during all the quarters that EMTS failed to pay withholding taxes, he had authority to sign checks on behalf of EMTS, he had an accountant review the books for possible diversion of corporate funds in March 1987, and he forced Blinstrub to leave the corporation and ultimately shut down EMTS.

■■■ Kinnie argues that he cannot be deemed responsible for paying of the taxes during the quarters at issue because that duty was delegated to Blinstrub. However, there may be more than one person deemed a "responsible person" within a corporation. *Gephart*, 818 F.2d at 473. Moreover, one who possesses significant control over the company's financial affairs may not escape liability by delegating the task of paying over the taxes to someone else. *Gustin v. U.S. I.R.S.*, 876 F.2d 485, 491 (5th Cir.1989); *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir.1989).

■■■ During the quarters at issue and thereafter, Kinnie possessed the status, duty, and authority necessary to be a responsible person under section 6672, as evidenced by his title, his stock ownership, his check writing authority, and his ability to force Blinstrub out of the business and close down EMTS. The fact that Kinnie did not always exercise his powers during the quarters at issue does not absolve him of his responsibility to see that the withholding taxes were paid over to the government. *See Thomsen*, 887 F.2d at 16–17 (holding that taxpayer was responsible person where taxpayer was treasurer of delinquent corporation and 45 percent shareholder of its parent, even though taxpayer had never handled the day-to-day operation and had no direct involvement at all with the corporation during the quarters

at issues). Therefore, the district court did not err in finding Kinnie a responsible person under section 6672 for the quarters at issue.

### C.

■■■ Plaintiff Kinnie argues that the district court erred when it entered judgment against him for an amount that exceeded the cash on hand of EMTS on the date that Kinnie acquired notice that EMTS had not been paying or remitting withholding and social security taxes to the IRS. Kinnie notes that there is some disagreement between Blinstrub and him regarding when he first learned of the tax delinquency. However, Kinnie asserts that he first learned of the tax delinquency in September 1986, and since we must consider the facts in the light most favorable to Kinnie, we will consider that date to be the first time Kinnie knew of the tax delinquencies. Kinnie concedes that as of this time, he willfully failed to pay over taxes within the meaning of section 6672. "Willfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government." *Gephart*, 818 F.2d at 475.

The record reveals that as of September 1986, EMTS had on hand $27,601.86 of unencumbered assets with which it could have paid the tax delinquency. Therefore, Kinnie argues that the judgment entered against him should not have exceeded the amount of $27,601.86 because that was all the corporation had on hand at the time he first learned of the tax delinquency. He further argues that any funds acquired after the date that he first learned of the tax delinquency ("after-acquired funds") cannot be used to determine his liability under section 6672. In support of this argument, Kinnie relies on *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In *Slodov*, the Supreme Court held that a trust to pay preexisting tax liabilities could not be imposed on all cash received by the corporation after the taxpayer assumed control of the corporation and after he became responsible and willful under section 6672. *Id.* at 259–60, 98 S.Ct. at 1791.

The issue of whether after-acquired funds may be considered in determining the liability of a responsible person who willfully fails to pay over employee withholding taxes to the IRS is an issue of first impression in this circuit. However, several other circuits have addressed this issue, and all have rejected Kinnie's interpretation of *Slodov*. There are several cases directly on point. *See Davis v. United States*, 961 F.2d 867, 871–78 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993); *Honey v. United States*, 963 F.2d 1083, 1088–89 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992); *Garsky v. United States*, 600 F.2d 86, 90–91 (7th Cir.1979); *Mazo*, 591 F.2d at 1154.

In each of these cases, the taxpayer was the responsible person at all times during which the tax delinquency accrued; however, the taxpayer did not know of the failure to pay until a later date, *i.e.*, he did not willfully fail to pay withholding taxes until learning of the tax delinquency at a later date. Nevertheless, in each case, the court held that the taxpayer was liable for failure to pay taxes during all times that the taxpayer was a responsible person to the extent that there were unencumbered funds existing to pay the taxes once the taxpayer learned of the tax delinquency. *Id.* Moreover, in each case, the court expressly concluded that the extent of the liability based on unencumbered funds included after-acquired funds. *Id.* *Slodov* was distinguished on the basis that in *Slodov*, the responsible person did not become responsible until after the time during which the tax delinquency accrued. *Id.*

The Supreme Court in *Slodov* based its decision in part on the rationale that to hold a taxpayer personally liable to the extent of after-acquired funds for taxes owed during a time in which he was not a responsible person would be to discourage new investors from attempting to salvage a failing business, which, if the salvage effort were successful, would enable the government to collect more in delinquent taxes than if the business failed. *Slodov*, 436 U.S. at 252–253, 98 S.Ct. at 1787–1788. The Supreme Court also explained that section 6672 which is violated only by a "willful failure" imposes liability

only where there is personal fault. *Id.* at 254, 98 S.Ct. at 1788.

The present case is clearly distinguishable from *Slodov* and is directly analogous to the previously cited circuit court cases. Kinnie was a responsible person at all times during which the tax delinquency accrued; he was an original investor and to hold him personally liable for an amount based on after-acquired funds would not have discouraged a new investor from attempting to save EMTS' failing business. Moreover, a degree of personal fault can be attributed to Kinnie in that he failed to fulfill his responsibilities during the time that the tax delinquency accrued. The only case which Kinnie cites to the contrary is *Matter of King*, 91–2 U.S.; Tax Cas. (CCH) P50, 330, 68 A.F.T.R.2d (P–H) 5249, 1991 WL 281726 (Bankr.S.D.Ala.1991). In this case, the court held that the taxpayer was personally liable under section 6672 only to the extent of unencumbered funds on hand at the time he learned of the tax delinquency even though the taxpayer had been a responsible person under the statute during the time that the tax delinquency accrued. 1991 WL 281726 at *3–*4.

However, the Eighth Circuit in *Honey* specifically rejected the holding in *Matter of King*, 963 F.2d at 1089. In light of the Supreme Court's rationale in *Slodov*, we believe the analysis followed by our sister circuits is correct, and we adopt and shall follow their reasoning. Therefore, because the record shows that over $500,000 in unencumbered funds passed through EMTS and Great Lakes after Kinnie learned of the tax delinquency, the district court did not err in rendering a judgment against Kinnie under section 6672 in an amount greater than the monies on hand at EMTS at the time Kinnie first learned of the tax delinquency.

### D.

■■■ Kinnie argues that the district court erred when it held that oral designations to the IRS for monies being tendered to pay the trust fund portion of withholding taxes is not binding on the IRS. Kinnie asserts that EMTS' accountant, Thompson, orally directed the IRS to apply 100 percent of $100,000 tendered by Kinnie to the "trust fund" por-

tion of the delinquent taxes. However, the IRS applied approximately one-half of the monies tendered toward interest, penalties, and the "Non-trust fund" portion of the delinquent taxes, and the IRS disputes that such an oral designation was made.[3] The district court held that, even assuming such an oral designation had been made, the IRS could properly allocate EMTS' tax payment in a manner in which it deemed to be in the United States' best interests in the absence of a written designation to the contrary by Kinnie or EMTS. In so holding, the district court relied on Revenue Ruling 79–284, 1979–2 C.B. 83.

■■■■■ The government also argues that under Revenue Ruling 79–284, a taxpayer's designation regarding how a payment must be allocated must be in writing in order to be binding upon the IRS. An agency's interpretation of a statute it administers is entitled to deference. *CenTRA, Inc. v. United States,* 953 F.2d 1051, 1055 (6th Cir.1992). "Although a revenue ruling 'is not entitled to the deference accorded to a statute or a Treasury Regulation,' a revenue ruling is entitled to some deference unless 'it conflicts with the statute it supposedly interprets or with that statute's legislative history or if it is otherwise unreasonable.'" *Id.* at 1056 (citation omitted). Weight is given to the IRS' reading of its Revenue Ruling because " 'it expresses the studied view of the agency whose duty it is to carry out the statute.'" *Id.* (citation omitted).

As Kinnie notes, Revenue Ruling 79–284 modified Revenue Ruling 73–305, 1973–2 C.B. 43. In this connection, Kinnie makes the following argument:

> Revenue Ruling 73–305 discussed the method in which *undesignated* payments were to be applied by the IRS. · Revenue Ruling 73–305 held that if the taxpayer failed to designate the application of the payment, the amount of the payment

would be applied to tax, penalty, and interest in that order. Revenue Ruling 79–284 modified Revenue Ruling 73–305 when it held that where no designation is made by the taxpayer, the IRS will allocate partial payments ". . . in a manner serving its best interests." The holdings of both Revenue Rulings address the issue of the *method* of allocation of *non-designated payments.* Neither Revenue Ruling addresses the issue that a designation *must* be in writing for it to be binding on the IRS.

Plaintiff's Brief at 10. (Emphasis in original).

Revenue Ruling 73–305 states in relevant part:

> Where additional taxes, penalty, and interest are assessed for one or more taxable periods and there are no specific instructions as to the application of the partial payment tendered by the taxpayer, the amount of the payment will be applied by the Service to tax, penalty, and interest, in that order. . . .

However, as the government correctly notes, the last paragraph of Revenue Ruling 73–305 explicitly makes this ruling inapplicable to withheld employment taxes.[4]

Revenue Ruling 79–284 provides in relevant part:

> [i]f the taxpayer fails to give specific instructions as to the application of the partial payment voluntarily tendered, the amount of such payment will be applied by the Service to tax, penalty, and interest, in that order. . . .

In addition, Revenue Ruling 79–284 makes Revenue Ruling 73–305 applicable to withheld employment taxes by stating,

> Rev.Rule 73–305 applies to withheld employment taxes . . . where the taxpayer provides specific *written* instructions for the application of a voluntary partial pay-

---

**3.** The "non-trust fund" portion of the delinquent taxes would include the employer's employment taxes as opposed to the employees' withholding taxes which formed the "trust fund" portion of the delinquent taxes.

**4.** The last paragraph of Revenue Ruling 73–304 states,

> This Revenue Ruling is applicable to all taxes under the Internal Revenue Code of 1954, except Alcohol, Tobacco, and firearm taxes, *withheld employment taxes,* and collected excise taxes. (Emphasis added).

ment. If no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes ... in a manner serving its best interest.

(Emphasis added).

Revenue Ruling 73–305 clearly indicates that a taxpayer must provide *written* instructions for the application of voluntary payments before the government will be bound by the taxpayer's instructions. It is the IRS' policy to apply nondesignated or improperly designated employment tax payments to the *employer's* employment tax liability first before applying such payments to the trust fund portion of the tax liability. *See* Internal Revenue Service, Policy Statement P–5–60, *reprinted in* Internal Revenue Manual (CCH) 1305–15; *see also United States v. Schroeder*, 900 F.2d 1144, 1146 n. 1 (7th Cir.1990).

This policy enables the IRS to collect the maximum amount of delinquent taxes possible because once a corporation goes out of business, the government will not be able to collect any delinquent non-trust fund taxes, but the IRS can still collect delinquent trust fund taxes from individuals under section 6672. *See Schroeder*, 900 F.2d at 1146 n. 1.

In sum, the government's interpretation of Revenue Ruling 79–284 is not unreasonable, nor does it conflict with any specific statute. Therefore, the district court did not err in holding that the IRS may allocate Kinnie's $100,000 payment in the manner it deems best absent written instructions from Kinnie or EMTS. Moreover, the requirement that specific written instructions be given by the taxpayer for the application of voluntary payments serves an important purpose; *viz.*, it prevents litigation over what was stated at various times and places.

### III.

For the reasons stated, the judgment of the district court is AFFIRMED.