111 F.3d 138
 79 A.F.T.R.2d 97-2163, 97-2 USTC P 50,555
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CLAUDE E. ATKINS ENTERPRISES, INC., Plaintiff/Appellant,
v.
UNITED STATES of America, Defendant/Appellee.
 No. 96-15074.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1997.
Decided April 2, 1997.
 
 1
 Before: SCHROEDER and O'SCANNLAIN, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-Appellant Claude E. Atkins Enterprises, Inc. ("Enterprises") appeals from a judgment of the United States District Court for the Eastern District of California, Robert E. Coyle, Jr., J., granting Defendant United States' motion for summary judgment. Enterprises brought suit against the United States seeking a tax refund. Enterprises alleged that the Internal Revenue Service ("IRS") mistakenly disregarded oral instructions and applied a $75,863.71 payment to a different corporate taxpayer's account. We have jurisdiction pursuant to 28 U.S.C. § 1346(a)(1) and 28 U.S.C. § 1291, and we now affirm.
 
 I. BACKGROUND
 
 4
 Plaintiff-Appellant Enterprises was a co-venturer with Greaves & Atkins, Inc. ("Greaves & Atkins"), in a joint venture known as Atkins & Atkins, JV ("joint venture"). I. Cecil Atkins ("Mr. Atkins") was president and a director of Greaves & Atkins, and as such had authority to direct payment of the joint venture's tax liabilities. Greaves & Atkins ceased operations in December 1987.
 
 
 5
 Greaves & Atkins failed to pay its fourth quarter 1985 employment tax liability. On October 20, 1996, IRS Revenue Officer Linda Aly spoke with Mr. Atkins about the outstanding tax liability. She advised him that Greaves & Atkins owed $75,863.71, and that if full payment were not received the IRS would begin to pursue its administrative collection remedies. Her case history notes show that Mr. Atkins stated that he would make full payment "tomorrow," i.e., October 21, 1986.
 
 
 6
 On October 21, 1986, Mr. Atkins delivered to the IRS a cashier's check for $75,863.71. The check itself did not designate how the payment was to be applied, and no written instructions accompanied the check. Ms. Aly applied the payment to Greaves & Atkins' fourth quarter 1985 liabilities. In applying the payment to those taxes, she relied on the fact that she was actively pursuing collection of Greaves & Atkins' fourth quarter tax liability, that Mr. Atkins had promised her full payment of the liability by the next day, and that the next day a check was delivered from Mr. Atkins in the exact amount demanded by the IRS for the fourth quarter liability.
 
 
 7
 The cashier's check was purchased with funds from the joint venture's checking account. Mr. Atkins did not inform Ms. Aly of the source of the funds used to purchase the cashier's check.
 
 
 8
 The joint venture itself incurred employment tax liabilities for the second, third, and fourth quarters of 1986, and for the calendar year 1986. Without enclosing payment, the joint venture filed its first tax return on December 22, 1986, for the second quarter of 1986. The joint venture filed the second quarter 1986 return without obtaining an Employer Identification Number (EIN). The joint venture obtained an EIN on February 5, 1987.
 
 
 9
 In February 1988, the IRS notified the joint venture that employment taxes remained unpaid and that the IRS intended to levy on property belonging to Enterprises, a partner of the joint venture. On February 9, 1988, the joint venture informed the IRS that the October 1986 payment in the amount of $75,863.71 had been made by the joint venture "in anticipation of tax obligations for the single construction project undertaken by this joint venture, and subsequently, all appropriate tax returns were filed with the IRS." The joint venture maintained that the payment had been misinterpreted by the IRS as a payment on behalf of Greaves & Atkins--which had since ceased operating--and that the payment should be reapplied to the account of the joint venture. The IRS rejected the request.
 
 
 10
 On January 30, 1990, the IRS served a notice of levy on First Intestate Bank and seized Enterprises' bank account in the amount of $134,139.16. Enterprises filed five separate unsuccessful administrative claims for refund of the levied amounts, maintaining that the joint venture's employment tax liabilities were satisfied in full as of October 1986. Enterprises then filed suit for refund in federal district court.
 
 
 11
 The district court granted Defendant's motion for summary judgment. This appeal ensued.
 
 II. STANDARD
 
 12
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). Summary judgment is proper pursuant to Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2546, 2552, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.
 
 
 13
 The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The role of the court in a summary judgment motion is not to weigh the evidence and the credibility of the witnesses, but solely to determine the genuineness of the factual issue. Thus, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Summary judgment should not be entered "if reasonable minds could differ as to the import of the evidence." Id. at 250-51. Yet, an issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.
 
 III. DISCUSSION
 
 14
 Enterprises argues on appeal that the district judge erroneously disregarded the affidavit testimony of I. Cecil Atkins ("Mr. Atkins"), and impermissibly construed the inferences against the non-moving party.
 
 
 15
 Mr. Atkins' affidavit, if accepted by the trier of fact as true, would establish the following material facts:
 
 
 16
 1) On or about October 17, 1986, he was told by the person who acted as bookkeeper for both Greaves & Atkins and the joint venture that the joint venture owed taxes and penalties in the amount of $75,863.71;
 
 
 17
 2) On October 20, 1986, Mr. Atkins spoke with Revenue Officer Aly "regarding the tax liabilities of several entities with which I was involved, including [the joint venture] and Greaves & Atkins. During that conversation, I indicated that I would immediately pay the tax liabilities of [the joint venture], which I believed to be $75,863.71."
 
 
 18
 3) "On October 21, the cashier's check was put in [a joint venture] envelope, and delivered to the IRS office, intended as payment of [the joint venture's] tax liabilities."
 
 
 19
 Viewing Mr. Atkins' affidavit in the light most favorable to the non-moving party, it is clear that the district court erroneously concluded that Enterprises had "offer[ed] no evidence that the $75,863.71 was intended to be applied to the liability" of the joint venture. See Order, at 51 (emphasis added). Mr. Atkins states that he intended to pay the joint venture's taxes, which he thought were then due, and that he "indicated" to the Revenue Officer that he would pay the joint venture's taxes the next day. Unfortunately for Enterprises, this affidavit still falls short of what is necessary to raise a genuine issue of material fact in the context of this case.
 
 
 20
 Enterprises does not challenge the Government's contention that the IRS duly notified Greaves & Atkins of the tax liability via mail. Moreover, it is uncontroverted that Mr. Atkins spoke with Revenue Officer Aly about the Greaves & Atkins' liability, although Mr. Atkins maintains that they discussed other tax liabilities as well. Moreover, a notice of federal tax lien had been recorded. Mr. Atkins, then, was on at least constructive notice of which taxes really were at that time due and owing.
 
 
 21
 Enterprises does not dispute that Mr. Atkins was the individual properly chargeable with seeing to it that Greaves & Atkins' taxes were paid. Enterprises' contention, at bottom, is that for some reason this notice duly given by the IRS was somehow not apprehended by Mr. Atkins. Enterprises offers little more than perfunctory assertions that an unexplained error was made by Mr. Atkins, an error that Mr. Atkins' affidavit rather vaguely attributes to a mistake by his bookkeeper. Most importantly, Enterprises offers but the barest, conclusory assertion that Mr. Atkins communicated this error to the Revenue Officer in a way that would have meaningfully put her on notice of his subjective intentions.
 
 
 22
 The Internal Revenue Service has long permitted a taxpayer to allocate payments among due and owing tax liabilities, where such payments are "voluntary." United States v. Energy Resources Co., Inc., 495 U.S. 545, 548, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990). A payment is "voluntary" as long as it is not made pursuant to an administrative or judicial order or decree. United States v. Technical Knockout Graphics, Inc., 833 F.2d 797, 802 (9th Cir.1987). It is not controverted that the payment at issue was a "voluntary" one. Thus, Enterprises was entitled to allocate the payment between the two liabilities as it saw fit.
 
 
 23
 The IRS urges this Court to find that Enterprises was required to make known its intentions in writing, and cites a substantial--though not unqualified--body of authority from other Circuits to that effect.[1] We decline to do so, however, because it is unnecessary to our decision in the present case. Even if a written instruction should not invariably be required, Enterprises has failed to establish the existence of a genuine issue of material fact. The district court below properly found that, whether or not a writing requirement be categorically imposed, instructions were not binding upon the IRS "unless they are timely or meaningfully made." Order, at 50. "The crucial issue before us," as the Third Circuit has recently noted, "is what constitutes an effective designation where voluntary payments are involved." Kaplan v. IRS, --- F.3d ----, 1997 WL 15121, at * 10. Enterprises argues rather cursorily in its reply brief that this is an issue that is improperly decided on summary judgment because it requires a judgment about the reasonableness of the parties' conduct. See Reply, at 6-7. This is, however, an issue upon which Enterprises will bear the burden of proof at trial. As such, Enterprises was obligated to come forward with specific, admissible evidence sufficient to demonstrate that a genuine issue of material exists that requires a trial. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510. Enterprises failed to do so.
 
 
 24
 The purely subjective intent of Mr. Atkins is irrelevant. Cindy's Inc. v. United States, 740 F.2d 851, 852 (11th Cir.1984). This is especially true where, as here, the surrounding circumstances indicate that the IRS had no or very little reason to know that Mr. Atkins intended to pay the joint venture's liability, but every reason to believe that he intended to pay the tax liability that was then due and owing, of which he had at the very least constructive notice, and for the collection of which they had contacted him. Yet, Mr. Atkins' affidavit contains but the most meager and wholly conclusory assertion that he somehow "indicated" to Revenue Officer Aly that he intended to pay the joint venture's taxes, rather than Greaves & Atkins' liability. This is insufficient to withstand summary judgment.
 
 
 25
 The record demonstrates that it is undisputed that Revenue Officer Aly discussed Greaves & Atkins' liability with Mr. Atkins. The next day a check arrived in the full amount of the liability. Mr. Atkins provided no written designation of what liability the funds were to satisfy. There was no notation of any kind on the cashier's check. The joint venture at that time had filed no tax returns, and did not even have an Employer Identification Number. Greaves & Atkins faced imminent forfeiture of assets; the joint venture had no known tax liability at all. From these circumstances, the IRS properly inferred that the payment should be applied to Greaves & Atkins' tax liability. That the funds were drawn, ultimately, from the joint venture's checking account is of no moment, especially where, as here, there is no indication that the Revenue Officer had any reason to know this. Janus v. United States, 557 F.2d 1268, 1269-70 (9th Cir.1977). That the funds arrived in an envelope bearing the name of the joint venture is likewise insufficient to put the IRS on meaningful notice that they should apply the funds to the tax liability of a business entity unknown to them at the time. Nothing contained in Mr. Atkins' affidavit seriously challenges this.
 
 III. CONCLUSION
 
 26
 In sum, Enterprises has failed to show that a genuine issue of material fact exists respecting the application of the funds to the Greaves & Atkins account. Accordingly, the district court's judgment is AFFIRMED.
 
 
 
 *
 Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Revenue Ruling 79-284, 1979-2 C.B. 83 states that a taxpayer must provide specific written instructions for the application of a voluntary partial payment of withheld employment taxes. The Sixth Circuit, in particular, has emphasized that requiring the designation to be in writing serves the important purpose of foreclosing litigation over purported oral statements and understandings. Kinnie v. United States, 994 F.2d 279, 288 (6th Cir.1993); accord, Kaplan v. IRS, --- F.3d ----, 1997 WL 15121, at * 10 (3d Cir.1997) (in the absence of a written designation, taxpayer must demonstrate facts sufficient to merit application of equitable estoppel). See also Slodov v. United States, 436 U.S. 238, 252 n. 15, 98 S.Ct. 1778, 1787 n. 15, 56 L.Ed.2d 251 (1978) (IRS Policy Statement P-5-60, setting out government's allocation policy, prevails unless government is notified in writing that taxes are to be applied differently)