Paul M. LARSON and Kristina Larson,
husband and wife, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 98–CY–3064–FVS.

United States District Court,
E.D. Washington.

Jan. 7, 2000.

James A. Perkins, Larson & Perkins, Yakima, WA, for plaintiffs.

Thomas A. Dosik, U.S. Department of Justice, Washington DC, James P. Connelly, U.S. Attorney's Office, Spokane, WA, for defendant.

## AMENDED ORDER GRANTING GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

VAN SICKLE, District Judge.

BEFORE THE COURT are the parties' cross-motions for summary judgment. Oral arguments on the motions were heard telephonically on July 8, 1999. The plaintiffs were represented by James A. Perkins; the government by Thomas A. Dosik. This Order will memorialize the Court's ruling.

### Procedural Background

This suit was brought by the plaintiffs, Paul and Kristina Larson, for a refund of $1,337.39 and the abatement of a Trust Fund Recovery Penalty assessed against Paul Larson in the amount of $143,547.47.

The defendant moved for summary judgment on April 13, 1999. The plaintiffs filed a cross-motion for summary judgment on June 10, 1999.

### Factual Background

In June 1988, Paul Larson ("Larson"), Gary Johnson ("Johnson"), and William Van Valkenberg ("Van Valkenberg"), formed CEMCO Acquisition Corporation ("CEMCO"). The purpose of CEMCO was to acquire the Central Engine and Machine Company, then owned by Johnson's father. Larson provided most, if not all, of the initial funding for the corpora-

tion. Larson, Johnson, and Van Valkenberg each personally guaranteed an operating loan of $400,000 and a revolving credit loan with the Bank of California ("BankCal"). Under the original stock agreement, Johnson owned 48 percent of CEMCO's outstanding shares; Larson and Van Valkenberg each owned 26 percent. Larson primarily viewed himself as an outside investor.

From incorporation until January 1994, Johnson was CEMCO's president and on-site manager. CEMCO's directors were Van Valkenberg, Cuyler Lighthall ("Lighthall"), and Larson's wife, Kristina Larson. Lighthall also served as the corporation's secretary and treasurer.

Paul Larson was never a corporate officer or an employee of CEMCO, nor was he on the Board of Directors. Larson had no involvement in the day-to-day running of the business. Larson was, however, a signatory on all of the corporation's checking accounts and was listed on corporate accounts as a person who could incur corporate debt. Larson claims that though he had authority from BankCal to sign checks and to incur debt on behalf of CEMCO, he was never authorized by the corporation to sign checks or to incur debt. Larson never wrote a corporate check until Johnson's resignation as president in January 1994.

In May 1989, Larson purchased all of Van Valkenberg's CEMCO shares, leaving Larson with a 52 percent ownership interest in the corporation. Larson argues that he was unable to vote these shares because the transfer was not done pursuant to the Stock Subscription Agreement. The government disputes that Larson lacked authority to vote the Van Valkenberg shares.[1]

In 1992, under Johnson's management, CEMCO failed to turn over its employee tax withholdings to the government. Upon learning of the tax delinquency from the IRS in November 1992, Larson borrowed money to loan to CEMCO, which in

turned paid the owed taxes. Johnson assured Larson that all future taxes would be timely paid.

On January 14, 1993, BankCal sent a letter to Larson and Johnson informing them that it wanted to terminate CEMCO's loan. BankCal was unhappy with the CEMCO account because it was continually overdrawn, financial statements were often submitted late, inventory levels were too high, overdue accounts receivable remained an unacceptable percentage of the total amount owed, the line of credit remained routinely drawn and was not revolving as intended, and the net income of the corporation remained too low.

On March 22, 1993, BankCal sent a letter to Johnson and Larson, complaining that CEMCO's checking account was routinely overdrawn. BankCal sent yet another letter to Johnson and Larson on May 7, 1993, informing them that CEMCO was in violation of the credit agreement.

In August 1993, BankCal sent Larson a letter informing him that CEMCO had an outstanding state tax lien. BankCal asked Larson to discuss the situation with Johnson and institute an "action plan" to prevent future tax liens. In response, Larson wrote a one-sentence letter to Johnson, which read: "Please let me know the status of this matter and how you are handling it." Def.'s Ex. S. Larson claims he followed up by personally discussing the situation with Johnson and that he was led to believe that the state tax lien had been paid, leaving CEMCO clear of any tax obligations.

A second state tax lien was filed against CEMCO in September 1993.

Still, Larson believed that CEMCO had a positive financial outlook. Late in 1993, however, Larson learned that Johnson had falsified corporate records and had failed to file federal employee withholdings returns for three quarters in 1993.

---

1. Also in 1989, Johnson transferred to Larson eight percent of CEMCO's outstanding shares. Again, Larson denies that he acquired a legal interest in Johnson's stock because the transfer was never officially recorded.

CEMCO filed its employee withholding returns for the second, third, and fourth quarters of 1993 in January 1994. Larson borrowed $40,000 from Lighthall to lend to Johnson, who in turn used the funds to pay a portion of the tax liability. The tax return for the first quarter of 1994 was never filed.

In January 1994, Johnson resigned as president and manager of CEMCO. Kristina Larson was named CEMCO's new president. *See* Def.'s Ex. X.

Lighthall was hired to assess CEMCO's financial status. After completing an investigation, Lighthall determined that CEMCO was insolvent. CEMCO closed its doors in March 1994.

Larson was assessed with a $143,577.47 Trust Fund Recovery Penalty on September 15, 1997, as a responsible person who willfully failed to collect, truthfully account for, and pay over CEMCO's employment taxes for the second, third, and fourth quarters of 1993, and the first quarter of 1994. On October 16, 1997, Larson paid $1,337.39, representing the employment taxes for one employee for one quarter. Larson filed a claim for a refund on October 17, 1997, which was denied. The plaintiffs filed this action on July 2, 1998.

The plaintiffs and the government have both moved for summary judgment.

## Legal Standard

A moving party is entitled to summary judgment where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. To survive summary judgment, a non-moving party with the burden of proof must make a sufficient showing of a material dispute as to an essential element of the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

2. 26 U.S.C. § 6672 provides, in relevant part: Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any

Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but the non-moving party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993).

## Analysis

■ In general, employers are required to withhold federal taxes from employee wages. When they do so, they hold the money in trust for the United States and must then pay the money over to the United States on a quarterly basis. These taxes are known as trust fund taxes. Under 26 U.S.C. § 6672, the IRS may assess a civil penalty against responsible corporate officials of an employer that fails to pay over collected employee taxes, equal to the amount of the delinquent trust fund taxes.[2] *See Davis v. United States,* 961 F.2d 867, 869 (9th Cir.1992). To be liable for a trust fund penalty under section 6672, an individual must (1) have been a "responsible person" and (2) have acted "willfully" in failing to collect or pay over the withheld taxes. *See id.* at 869–70.

■ The individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that he was not a responsible person or that he did not act willfully. *See United States v. Jones,* 33 F.3d 1137, 1139 (9th Cir.1994); *Hochstein v. United States,* 900 F.2d 543, 547 (2nd Cir.1990).

### A. Responsible Person.

#### 1. Legal Definition.

■ A person is responsible for the payment of trust fund taxes for purposes

manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

of the trust fund penalty if he had the "final word on which bill should or should not be paid." *Maggy v. United States,* 560 F.2d 1372, 1374 (9th Cir.1977). "The final word does not mean 'final' but instead 'the authority required to exercise significant control over the corporation's financial affairs, regardless of whether [the individual] exercised such control in fact.'" *Jones,* 33 F.3d at 1139 (quoting *Purcell v. United States,* 1 F.3d 932, 937 (9th Cir.1993)). "[R]esponsibility is a matter of status, duty, and authority, not knowledge." *Davis,* 961 F.2d at 873.

> Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so.

*Purcell,* 1 F.3d at 937. Courts are instructed to "look beyond official titles to the actual decision-making process." *Jones,* 33 F.3d at 1139. More than one person can be responsible for the payment of taxes, and liability can be imposed on any responsible person.

■ Factors to consider when determining whether an individual is a "responsible person" are whether the individual: (1) is an owner, an officer, or a director of the corporation; (2) manages the day-to-day operations of the corporation; (3) makes decisions as to disbursement of funds and payment of creditors; (4) has check-signing authority; (5) has authority to sign corporate tax returns; and (6) can hire and fire employees. *See Alsheskie v. United States,* 31 F.3d 837, 840 (9th Cir. 1994) (Trott, J., dissenting) (citing *Denbo v. United States,* 988 F.2d 1029, 1032 (10th Cir.1993); *Brounstein v. United States,* 979 F.2d 952, 954–955 (3rd Cir.1992); *Raba v. United States,* 977 F.2d 941, 943 (5th cir.1992)). Courts have generally given broad interpretation to the term "responsible person." *See Denbo,* 988 F.2d at 1032. In fact, the Ninth Circuit has described the IRS's enforcement power under section 6672 and applicable case law as

"Draconian." *Phillips v. IRS,* 73 F.3d 939, 943 (9th Cir.1996).

### 2. Larson was a Responsible Person.

The government concedes that several of the factors listed above do not apply in this case. Larson was not a director of CEMCO, nor was he a corporate officer. He did not participate in the day-to-day operations of the corporation.

However, other factors favor a finding of responsibility. Larson did have the authority, at least from CEMCO's primary lender, to sign checks and to incur corporate debt. Furthermore, he did have some ability to control the disbursement of funds and the payment of creditors, as he loaned funds to the corporation in late 1992 for the express purpose of paying CEMCO's delinquent taxes.

The primary issue in this case is the characterization of Larson's ownership interest in CEMCO. The government contends that Larson was CEMCO's majority shareholder during the tax periods in question and, as such, had absolute authority over the control of the corporation. The government argues that as majority shareholder, Larson had the authority to change the board of directors, which in turn could have changed the management structure of CEMCO. Along with this corporate control, Larson could then vest himself with authority to hire and fire employees, to write checks, to make decisions as to the disbursement of funds and the payment of creditors, and to sign corporate tax returns.

Larson, on the other hand, disputes that he was CEMCO's majority shareholder. He claims that he was never able to exercise majority shareholder control over CEMCO because: (1) his wife had a community property interest in all of his shares and (2) procedural deficiencies in the transfer of the Johnson and Van Valkenberg shares prevented him from voting those shares.

*a. Community Property.* Larson claims that because his wife had a community property interest in his CEMCO stock, he was never a majority shareholder. He argues that he would have had to obtain his wife's consent to exercise majority shareholder status.

■ Larson's argument lacks merit. Even assuming the shares were indeed held as community property, Larson had the authority to exercise sole control over the stock. In Washington, either spouse, acting alone, may manage and control community property unless the it meets one of six criteria not applicable in this case. *See* WASH. REV. CODE § 26.16.030. Thus Larson, acting alone, could have voted the shares of CEMCO stock.

*b. Equitable Interest Only.* Larson also argues that he did not have majority shareholder status because the Van Valkenberg shares were not transferred in compliance with the Stock Subscription Agreement. *See* Pls.' Ex. 5. Larson argues that because Johnson never transferred Van Valkenberg's shares into Larson's name in CEMCO's books for voting purposes, Larson never had the authority to exercise majority shareholder control of the corporation.

■ The Court finds that any procedural deficiency to the transfer of the Van Valkenberg shares was insufficient to divest Larson of the majority shareholder status that those shares conferred. First, Larson openly held himself out to be CEMCO's primary shareholder. In the minutes of a corporate meeting held on January 24, 1994, Larson is identified as CEMCO's "principal shareholder." Def.'s Ex. X. Furthermore, Larson represented to the IRS in August 1996 that he owned 60% of CEMCO's shares. Def.'s Ex. A.

Second, even if the terms of the transfer violated the Stock Subscription Agreement, Larson had an equitable interest in the Van Valkenberg shares, for which he had paid valid consideration. While Lar-

son admits that legal remedies existed under which he could have tried to exercise his equitable interest in the shares, Larson claims that those remedies would have been too time consuming to have been effective. Yet, had Johnson demanded corporate formality, Larson gives no reason why Van Valkenberg would not have voted the Van Valkenberg shares at Larson's direction.

Finally, the Court finds it noteworthy that Larson is an experienced member of the Washington bar, evidencing a certain level of sophistication and knowledge. The Court finds it difficult to accept that one experienced in corporate matters would pay good money for shares he could not exercise control over. The Court finds it just as difficult to accept that Larson would allow an error in corporate formality to go uncorrected for four years if he truly believed that the error affected his legal interest in the shares.[3]

■ The Court finds, as a matter of law, that Paul Larson was a responsible person during the last three quarters of 1993 and the first quarter of 1994. Larson was the majority shareholder and primary financier of a closely-held corporation. He was listed on CEMCO's BankCal account as one who could incur corporate debt and could issue corporate checks. Though not a director or an officer, he had the absolute power as majority shareholder to control all operations of the corporation. When the corporation ran into financial trouble, both BankCal and the IRS looked to Larson, as well as to Johnson, to remedy the problem. Twice when CEMCO failed to pay its federal taxes, Larson personally borrowed money to infuse into the corporation. Though he chose not to exercise it, Larson had the effective power to ensure that federal taxes were paid. The Court finds this power sufficient to establish that Larson had the duty, authority, and status which render him a responsible person under section 6672.

---

**3.** There is no indication from the record presented that Van Valkenberg had any involve-

ment with CEMCO after the transfer of those shares in 1989.

Supporting this ruling is the Tenth Circuit's decision in *Denbo v. United States.* *See Denbo*, 988 F.2d 1029 (10th Cir.1993). In *Denbo*, the taxpayer was the 50% shareholder of the corporation. While the taxpayer was the corporation's secretary and treasurer, as well as a director, he had no involvement in the day-to-day operations of the business. He had check-signing authority on the corporate bank accounts, but never used it. The taxpayer arranged corporate financing and personally borrowed money to keep the business operational. Though the taxpayer met regularly with the corporation's other 50% owner, Allred, to discuss the financial solvency of the corporation, Allred wrote all corporate checks, all payroll checks, hired and fired employees, and reviewed and signed the payroll tax returns. *See Denbo*, 988 F.2d at 1031.

The Tenth Circuit found that the those facts were sufficient to permit the jury to find that the taxpayer was a responsible person.

The record provides evidence of Denbo's status as a responsible person within the meaning of section 6672. He made arrangements for several bank loans and also made personal loans to the corporation "in order to keep things going." [ ] He held regular meetings with Allred and the accountants. And, while he did not exercise his authority to sign checks, he had such authority from the beginning. These undisputed facts, along with Denbo's 50% stock ownership and status as an officer and director of the corporation, demonstrate that he possessed "significant authority in the . . . fiscal decisionmaking of the corporation." [ ]

Denbo correctly points out that it was Allred, not he, who controlled the day-to-day operations of the corporation and made decisions concerning the payment of creditors and disbursement of funds. However, while it is clear that Allred exercised *greater* control over the corporation than Denbo, "[s]ection 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs." [ ] It suffices that Denbo had "significant, as opposed to absolute, control of the corporation's finances." [ ] He was responsible for infusing capital into the corporation, often pledging his own assets as collateral. *His financial involvement in the corporation, along with his check-signing authority, gave him the effective power to see to it that the taxes were paid.*

*Id.* at 1032–33 (internal citations omitted) (emphasis added).[4]

Like Denbo, Larson infused money into the corporation. Like Denbo, Larson had the unexercised authority to write corporate checks. Like Denbo, Larson's lack of day-to-day involvement in the corporation cannot shield him from his responsibility to see that CEMCO's taxes were paid. The only meaningful distinction between the facts in *Denbo* and the case at hand is that Denbo was an officer and director of the corporation, while Larson was not. However, the record presented to the Court shows that, other than Johnson, CEMCO's directors and officers existed for corporate formality only. The Court is therefore unwilling to find that Larson's lack of a corporate title divests him of the responsibility to see that CEMCO's taxes were paid.

The Court is slightly troubled by the possible implication that a majority shareholder will always be a responsible person. However, in this case, Larson's involvement in CEMCO was greater than just that of a majority shareholder. He was the primary source of funding for the con-

---

**4.** The Court's holding is also supported by the Sixth Circuit's decision in *Kinnie v. United States.* *See Kinnie*, 994 F.2d 279 (6th Cir. 1993). The taxpayer in *Kinnie* was the 50% shareholder of a business. Though vice-president, he was not involved in the day-to-day operations of the business and viewed himself as an outside investor. The Sixth Circuit held that he was a responsible person as a matter of law because of his ownership, title, and check-writing authority. *See id.* at 284.

tinuing operations of the corporation. He had the authority to write corporate checks, and at least once directed the payment of creditors. The Court therefore finds that Paul Larson was a responsible person as a matter of law.[5]

### B. Willfulness.

Even if an individual is found to be a "responsible person," he is not liable under section 6672 unless he also *"willfully* failed to collect, truthfully account for, and pay over withheld taxes ...." 26 U.S.C. § 6672 (emphasis added).

 Willfulness, as it is used in section 6672, is the "voluntary, conscious and intentional act to prefer other creditors over the United States." *Davis*, 961 F.2d at 871 (citations omitted). An intent to defraud the government or other bad motive need not be proven. *See id.* " '[R]eckless disregard' of whether the taxes are being paid over, as distinguished from actual knowledge of whether they are being paid over, may suffice to establish willfulness." *Phillips*, 73 F.3d at 942.

> The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government, [ ], such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted.

*Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.1979) (internal citation omitted).

It is the government's position that Larson acted willfully as a matter of law by failing to ensure that CEMCO's taxes were paid after learning that Johnson had failed to pay them in the past. The plaintiffs argue that whether an individual acted with a "reckless disregard" is a question of fact that must be determined by a fact

finder. The plaintiffs' position is not supported by case law.

One court accurately summarized as follows the distinctive fact patterns from which to infer a reckless disregard sufficient to demonstrate willfulness as a matter of law under section 6672:

> "First, courts have held that reliance upon the statements of a person in control of the finances of a company may constitute reckless disregard when the circumstances show that the responsible person knew that the person making the statements was unreliable. [citation omitted] This requires a finding that the responsible person had knowledge that the other individual had in the past failed to perform adequately with regard to the financial affairs of the taxpayer entity ....
>
> Second, courts have held that '[w]illful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government.' [citation omitted] This requires a finding that the responsible person had 'notice' that the taxes had not been remitted in the past."

*Thomsen v. United States*, 887 F.2d 12, 18 (1st Cir.1989) (quoting *I.R.S. v. Blais*, 612 F.Supp. 700, 710 (D.Mass.1985)).

The plaintiffs also argue that willfulness based on a reckless disregard of an obvious risk that taxes will not be paid cannot be found as a matter of law when the unpaid taxes which put the responsible person on notice are subsequently paid over prior to incurring a new tax liability. Essentially, the plaintiffs argue that the slate was wiped clean once Larson borrowed the money to pay the delinquent taxes for 1992, or, at the very least, the

---

5. The plaintiffs rely heavily on the more limited definition of "responsible person" found in *In re Premo*. *See In re Premo*, 116 B.R. 515 (Bankr.E.D.Mich.1990). Whether or not the analysis in *Premo* is compelling, the Court is not inclined to look at precedent from the Bankruptcy Court of the Eastern District of

Michigan for guidance on an issue that the Ninth Circuit has firmly and competently addressed. Furthermore, the Sixth Circuit's decision in *Kinnie* casts serious doubt on the continuing validity of *Premo*'s definition of a "responsible person." *See Kinnie*, 994 F.2d at 284.

payment creates a question of fact as to whether Larson was on notice. Neither case law nor logic supports this theory.

The Ninth Circuit rejected a similar argument in *Phillips. See Phillips,* 73 F.3d at 943. In upholding a jury's verdict of liability under section 6672, the Ninth Circuit noted that "[e]ven if the jury believed [the taxpayer's] account entirely, it could conclude that he should have asked [the delegatee] if she was paying the taxes, *in light of her failure to pay them three years earlier." Id.* (emphasis added).

The Court does not mean to suggest that, as a matter of law, a delegatee's one-time failure to pay taxes will, in perpetuity, brand that delegatee unreliable; after a period of unmarred years, the delegatee may be able to resurrect his or her former trustworthiness.

This is not such a case. The fact that Larson personally ensured that the delinquent 1992 taxes were paid did not transform Johnson into a reliable and trustworthy on-sight manager four months later. To hold otherwise would allow top corporate officials to engage in a cycle of delegating responsibility to persons known to be unreliable yet escaping liability by remedying the situation once the IRS takes notice of a delinquency.

■ Larson does not deny that he learned in November 1992 that Johnson had failed to submit tax withholdings; in fact, Larson personally borrowed the funds to pay the owed taxes. At that point, Larson was put on notice that Johnson had mismanaged the corporation and could not be trusted to pay CEMCO's taxes. Larson also admits receiving correspondence from BankCal several times in 1993 concerning the unsatisfactory status of CEMCO's account. In August 1993, Larson learned from BankCal that there was an outstanding state tax lien filed against CEMCO—a tax lien that Johnson had not disclosed.

Despite these warning signs, Larson did not take a more active role in CEMCO's operational affairs. He did not check corporate records. He did nothing to ensure that CEMCO's federal tax withholdings were actually being filed. He did not ask to see the withholdings returns. Instead, Larson relied on the assurances of a person he knew had failed to file federal withholdings in the past.

The facts before the Court are similar to those that were before the Ninth Circuit in *United States v. Leuschner,* a case in which the court found willfulness as a matter of law. *See Leuschner,* 336 F.2d 246, 248 (9th Cir.1964). Leuschner was a director and general manager of two corporations, Yosemite Creek Company and Kadota Creek Company. Leuschner hired Anders to keep the books, prepare and file tax returns, and pay the bills for Yosemite. Leuschner later learned that Anders had not been paying over Yosemite's federal withholdings. After this disclosure, Yosemite was forced to close, but Kadota carried on what was essentially the same business. Leuschner hired Anders to perform for Kadota the same bookkeeping functions that he had performed for Yosemite. Once again, Anders failed to pay over the federal withholdings.

The trial court found that Leuschner was a responsible person but that he did not willfully fail to submit the taxes for Kadota. On appeal, the Ninth Circuit reversed the district court's finding on willfulness.

> When Kadota took over the business, Leuschner knew that Anders, on whom he relied, had failed to see that such taxes were paid and had preferred other creditors. Yet he did absolutely nothing to see that this did not happen again. He was Anders' superior in the company. He had a duty to see that the taxes were paid. He knew that the withheld moneys were a trust fund for the United States, and were to be paid to it. He knew that Anders, to whom he looked to carry out that duty, had not done it. He could no longer, in good faith, look to Anders to do his duty for him. *His complete failure to do anything to see that Anders, or he himself, performed*

*that duty, is, we think, as a matter of law, a "voluntary, conscious and intentional" failure.* The court's contrary finding is clearly erroneous.

*Id.* at 248 (emphasis added).

A jury question would exist if there was a genuinely disputed issue of fact as to whether Larson was put on notice of Johnson's mismanagement. Here, there is no such issue. The Court believes the undisputed facts in this case could not support the conclusion that Larson did not act willfully when he failed to correct Johnson's mismanagement of CEMCO; the Court thus holds as a matter of law that Larson's failure to see that federal taxes were paid was willful.

IT IS HEREBY ORDERED:

1. The government's motion for summary judgment (Ct.Rec.13) is GRANTED.

2. The government is awarded a judgment of $142,240.08, plus interest.

3. The plaintiffs' motion to continue summary judgment hearing (Ct.Rec.27) is GRANTED.

4. The government's motion to strike brief and declaration (Ct.Rec.32) is DENIED.

5. The plaintiffs' motion for permission to file over length brief (Ct.Rec.38) is GRANTED.

6. The plaintiffs' motion for summary judgment (Ct.Rec.41) is DENIED.

IT IS SO ORDERED. The District Court Executive is hereby directed to enter this order, ENTER A JUDGMENT, furnish copies to counsel, and CLOSE THE FILE.