**In re POOL & VARGA, INC., d/b/a Spencer Printing, Debtor.**

**Bankruptcy No. 85–07919.**

United States Bankruptcy Court, E.D. Michigan, S.D. at Flint.

May 13, 1986.

Dennis M. Haley and Richard S. Harris, Flint, Mich., for debtor.

David S. Grossman, Washington, D.C. and Robert W. Haviland, for I.R.S.

## MEMORANDUM OPINION REGARDING DEBTOR'S OBJECTION TO ASSESSMENT OF PENALTIES BY THE INTERNAL REVENUE SERVICE

ARTHUR J. SPECTOR, Bankruptcy Judge.

The debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on July 16, 1985. On December 9, 1985, even though the Internal Revenue Service (hereinafter referred to as IRS or Service) had not yet filed a proof of claim, the debtor filed an objection to the IRS' claim for penalty assessments. The penalties, which were assessed between late 1981 and early 1984, were imposed for failure of the debtor to timely file the appropriate tax returns, pursuant to 26 U.S.C. § 6651(a)(1); for failure to timely pay its taxes, pursuant to 26 U.S.C. § 6651(a)(2); and for failure to timely make deposits of taxes due, 26 U.S.C. § 6656(a).

A contested evidentiary hearing was held and briefs were submitted. There are two issues for determination. First, to what extent does this Court have the jurisdiction to determine whether the penalties were properly assessed, in the first instance, where the penalties have not yet been paid, and in the second instance where the penalties have been paid but the debtor seeks a refund or credit for improperly assessed penalties? Second, to the extent that the Court has jurisdiction, has the debtor shown reasonable cause for excusing the payment of the penalties?

We address the jurisdictional question first. There are two facets to the debtor's request for relief. It seeks to have the unpaid penalties assessed against it disallowed, and it asks also that in the event any penalties have already been paid, that the Court disallow the assessment of those penalties and order a refund or set-off of the amounts paid. With regard to the former, the Court clearly has the authority to determine whether the penalties were properly assessed, pursuant to 11 U.S.C. § 505(a)(1). That section provides that this Court may determine "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Assessed but unpaid penalties fall into the broad grant of jurisdiction quoted above, and do not fall within any of the enumerated exceptions. The IRS does not challenge our authority to rule on whether the unpaid penalties were properly assessed. Therefore, we find that we may adjudicate the allowance or disallowance of the assessed but unpaid tax penalties.

The parties do, however, disagree on whether this Court has the authority to order that any penalties which were paid, but were improperly assessed, be refunded to the debtor or be credited toward its other outstanding tax debts. Section 505(a)(2)(B) of the Bankruptcy Code provides that the Bankruptcy Court may not determine the right of the estate to a tax refund until the estate has requested such refund from the government and it has either made a determination on the request or 120 days have passed since the claim was made. The debtor takes the position that the term "refund", as used in the statute, means only that we cannot grant affirmative relief to the debtor, that is, put money back in the debtor's—or the estate's—pocket; but the statute would not preclude the Court from reducing the estate's tax to the extent that a determination of an improper assessment would lead to a credit or set-off against other outstanding tax liabilities. The debtor further represents that since the amount which it seeks to set-off against the tax liability is less than

the amount of the government's claim,[1] § 505(a)(2)(B) is no bar to our deciding whether penalties paid by the debtor were improperly assessed. The government disagrees with this interpretation, arguing that § 505(a)(2)(B) precludes us from considering any dispute over taxes already paid unless the trustee or debtor in possession had previously made a demand for refund upon the government.

The extent to which § 505(a)(2)(B) limits the otherwise broad grant of jurisdiction set forth in § 505(a)(1) is an interesting question apparently of first impression.[2] However, under the facts presented, it is unnecessary to determine this issue.

In its objection to the IRS' claims, the debtor requests a refund of improperly assessed penalties "in the event that the debtor and debtor in possession has paid any of the penalties described above." The debtor states in its briefs that the amount of refunds on such penalties that it seeks is less than the amount of its other outstanding tax liabilities. However, the debtor has failed to point to any particular penalties which it has already paid that it claims were improperly assessed, either in its objection to claim or, more importantly, in the evidence submitted at the hearing. Thus, we agree with the IRS that this issue is, at least at this juncture, merely academic. Accordingly, we refrain from ruling on this issue.

With respect to the penalties which remain unpaid, the debtor argues that in each of the statutory provisions relied upon by the IRS, to-wit: 26 U.S.C. §§ 6651(a)(1), 6651(a)(2) and 6656(a), an important condition is placed upon the right of the government to impose a penalty. Each clause provides that upon the taxpayer's failure to comply with its particular provisions, a penalty shall be assessed, *"unless it is shown that such failure is due to reasonable cause and not due to willful neglect."* (Emphasis added). The debtor contends that it has proved that its failures to comply with the statutory filing and payment provisions were in fact due to "reasonable cause" for the purposes of these statutes.

The regulations regarding these sections promulgated by the Secretary of the Treasury explain what constitutes "reasonable cause" under the statutes.[3] Reg. § 301.-6651-1(c)(1) provides the following definition of reasonable cause:

If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for the payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this Chapter) if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax ... A taxpayer will be considered to have exercised ordinary business care and pru-

---

**1.** The government filed its proof of claim on February 21, 1986, two days after the hearing on the instant motion. In that proof of claim, the government claims that the debtor owes $66,766.13 for taxes, penalties and interest due on the date of the petition for relief.

**2.** The debtor does point to some legislative history indicating that Congress intended that bankruptcy courts be allowed to hear refund actions in the nature of a set-off or counterclaim without the estate's having to file a refund action. *See* 124 Cong.Reg. H11,110 (daily ed. Sept. 28, 1978), S11,427 (daily ed. Oct. 6, 1978).

**3.** These regulations generally may be found at 26 C.F.R. § 1 *et seq.* Hereinafter the regulations will simply be referred to as Reg. § _____.

dence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

One of the grounds for excusing the penalty, at least insofar as it concerns the failure to pay or deposit the taxes due, is that had the taxpayer done so, it would have suffered "undue hardship". "Undue hardship", is defined in Reg. § 1.6161–1(b), as follows:

The term "undue hardship" means more than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer from making payment on the due date of the amount with respect to which the extension is desired. If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

From these rather broad definitions of reasonable cause and undue hardship, the debtor argues that one example of reasonable cause for non-payment and non-filing exists when payment of the tax and the filing of returns would render the taxpayer insolvent and unable to continue its business. In support of that position, the debtor cites the case of *Glenwal-Schmidt v. United States*, 78–2 U.S.T.C. ¶ 9610 (D.D.C. 1978). In that case, the taxpayer was a contractor which entered into an agreement to build housing for the United States Navy. During the course of the construction, various disputes arose between the taxpayer and the Navy regarding quality of work, completion of the work by certain deadlines, and other problems all too frequently associated with construction contracts. During negotiations to resolve these disputes, the Navy began withholding certain payments on the project, thus causing the taxpayer's cash flow to be severely restricted. In order to avoid defaulting on the contract, the taxpayer chose to use the cash it did have to pay subcontractors and materialmen who would have otherwise refused to continue work on the project, and consequently failed to make two quarterly deposits of withholding taxes to the IRS. The amount being withheld by the Navy was approximately double the amount of the taxes due. When, some two years later, the disputes between the owner of the project and the taxpayer were resolved with the result that the taxpayer received a lump sum settlement, it paid the taxes, including the assessed penalties. It then sued for a refund of the penalties, asserting that its failure to pay the taxes was due to reasonable cause under § 301.6651–1(c)(1). After considering the statute and regulations cited above, the district court held that when faced with a choice of defaulting on its contract or paying the tax, the taxpayer could not have paid the tax without suffering undue hardship, and therefore had reasonable cause to be excepted from liability for the penalty. *Id.* at page 84,972.

The debtor alleges that it would have suffered an equally severe hardship, i.e., it would have gone out of business, had it filed the returns and paid the taxes when due. Its evidence supported the latter allegation. George Varga, the president of the debtor in possession, testified that the debtor was in the printing business. In the period of 1981–1983, when these liabilities were incurred, the debtor employed four people, including the president, all of whom were essential to the operation of the business. It would not have been possible to lay off any of the employees without terminating the enterprise. Mr. Varga testified that the company needed gross sales of approximately $25,000 per month to break even. However, between 1981 and 1983, the debtor took in considerably less than this amount. For example, for the 12 month period ending on October 31, 1983, the debtor's average receipts were only $15,783 per month. There were several reasons for the decline in the debtor's receipts. The debtor lost its largest account when that customer relocated to the Detroit area; its second largest customer encountered its own financial difficulties, causing a reduction in business for the

debtor; and the Flint area, where the debtor was located, was in the midst of a severe recession. Overall, the debtor's sales decreased approximately 50% during this period. Mr. Varga further testified that the IRS was not the only creditor to whom the debtor failed to make timely payments. The debtor eventually defaulted on an obligation to Citizens Bank, on a buy-out agreement with Ronald Pool (formerly a major shareholder of the company), and on an equipment lease with A.B. Dick. The debtor made sporadic payments on these obligations and also made payments to the IRS to the best of its ability. Mr. Varga also stated that the top priority for making payments were those expenses necessary to keep the business running, such as payment of the company's three employees; at the same time, Mr. Varga's salary decreased. There were no available assets which the debtor could liquidate without putting itself out of business; all assets which it had on hand were vital to its operations. Finally, Mr. Varga testified that he unsuccessfully attempted to borrow money for the company. In short, the debtor presented a fairly detailed—and grim—depiction of the severe financial difficulties it suffered during this period, which ultimately led to the decision to file for relief under Chapter 11 in 1985.

The government did not vigorously attempt to rebut or impeach the testimony of the debtor's president, nor does it contend that the debtor did not undergo tough times financially during the period in question. Instead, the Service takes the position that financial duress does not constitute reasonable cause such as to excuse the timely filing and payment of taxes. Should the taxpayer's lack of funds or inability to pay the taxes due to financial difficulties be sufficient cause to delay the payment of taxes, the exception would swallow the rule. In particular, it relies on the case of *Wolfe v. United States*, 612 F.Supp. 605 (D.Mont.1985) where the court stated that:

Neither economic difficulties nor the illness of an employee constitute reasonable cause for failure to file returns or pay taxes. Almost every non-willful failure to pay taxes is a result of financial difficulties. But to allow businesses to postpone filing returns and paying taxes until economic conditions improve would severely restrict the Service's ability to raise revenue for the operation of the federal government.

*Id.* at 608. (Citations omitted). The government cites several other cases in support of its assertion that it is "well settled" that the taxpayer's shortage of funds is not reasonable cause for the purposes of the statute. *See e.g. Jones v. Commissioner*, 25 T.C. 1100 (1956), *rev'd on other grounds* 259 F.2d 300 (5th Cir. 1958); *Jane S. Langston*, ¶ 77,421 P–H Memo. T.C. (1977) and *Joseph P. Delfino*, ¶ 81,657 P–H Memo. T.C. (1981).

In an action to contest or set aside the assessment of the penalties at issue here, it *is* well settled that the taxpayer has the burden of proving that it had reasonable cause for not complying with the statute. *Geraci v. Commissioner*, 502 F.2d 1148, 1149 (6th Cir.1974). While the elements necessary to constitute reasonable cause is a question of law, the question of whether reasonable cause exists in any particular case is a question for the trier of fact. *In re Fisk's Estate*, 203 F.2d 358 (6th Cir. 1953); *Glenwal-Schmidt v. United States*, *supra*. In resolving disputes regarding the Internal Revenue Code, the regulations developed by the Secretary of the Treasury have the effect of law, particularly when those regulations have been in existence for a substantial time without amendment to either the regulations or the statutes from which those regulations are derived.[4] *Joseph Gann, Inc. v. Commissioner*, 701 F.2d 3 (1st Cir.) *cert. denied*, 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983).

 We agree with the IRS that the debtor has not shown sufficient cause to

---

**4.** The last amendments to the regulations at issue here were adopted in 1973. Sections 6651 and 6656 have been amended as recently as 1984 and 1981, respectively; but not in any way which would affect the definition of reasonable cause.

warrant excusing it from liability for the penalty assessed under 26 U.S.C. § 6651(a)(1) for failure to timely file its tax returns. Mr. Varga testified that his failure to timely file the tax returns for the debtor when it could not pay the tax in part or in full was due to gross misjudgment on his part and to his former accountant's erroneous advice. He stated that he never knew that he was required to file the returns notwithstanding the debtor's inability to pay the tax. A taxpayer's financial difficulties may or may not present reasonable cause for failure to actually pay the tax; however, financial difficulties have no effect on a taxpayer's ability to file returns in a timely fashion. *Jones v. Commissioner, supra; Joseph P. Delfino, supra.* Therefore, we find that the debtor has not shown reasonable cause to be excused from the penalty for failure to file its returns in a timely fashion.

■ Although the IRS' argument with regard to the failure to pay or deposit taxes seems logical, and upon first blush we were reluctant to accept the debtor's "times were tough" excuse as valid, the position of the IRS in this case is supported by neither the Internal Revenue Code nor the regulations issued and the cases decided thereunder. Neither the statute nor the regulations exclude the possibility that the taxpayer's financial difficulties may constitute reasonable cause. Instead, a fair reading of the regulations leads to just the opposite conclusion. An explanation of what constitutes reasonable cause set forth in Reg. § 301.6651–1(c)(1) defines "reasonable cause" in broad terms. The regulation directs the trier of fact to determine whether the taxpayer exercised "ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer undue hardship" if he timely paid the taxes. The regulations expressly direct the trier of fact to take the taxpayer's financial situation into account. The regulation provides some examples of what does *not* constitute reasonable cause, but none of those situations fit the case at bar. For example, if a taxpayer has incurred

lavish expenses or has invested in speculative or illiquid assets and consequently cannot pay the tax collector at the appropriate time, reasonable cause will not have been shown. However, there is no evidence that the debtor here acted recklessly or in any way which jeopardized its ability to pay its taxes.

Similarly, the debtor's circumstances fall within the equally broad definition of undue hardship in Reg. § 1.6161–1(b). The regulation provides as an example of undue hardship a situation where the taxpayer has to sell assets at a sacrifice price in order to pay the tax. That situation is not too dissimilar from the case at bar, where the evidence showed that the debtor would have had to terminate its business and liquidate in order to pay the taxes. Thus, the statute and the regulations permit a taxpayer to show that his or her particular financial difficulties constituted sufficient cause to excuse the assessment of the penalties.

The cases cited by the IRS for the proposition that the taxpayer may not be excused from the penalty merely for the reason that it did not have the money to pay the taxes are unpersuasive. In none of the cases cited above, *e.g. Jones v. Commissioner, Jane S. Langston,* and *Joseph P. Delfino,* was the IRS attempting to impose the penalties under §§ 6651(a)(2) and 6656(a). Instead, the taxpayers were assessed penalties for filing fraudulent or negligent returns, 26 U.S.C. § 6653, as well as for the failure to file timely, § 6651(a)(1). While these cases do state that financial difficulty or inability to pay is not a sufficient basis to avoid the assessment of the penalty for failure to *file* one's tax return, none of them hold that financial hardship cannot constitute reasonable cause for failure to pay or deposit the tax. Indeed, had any of those cases so stated, it would have been *dictum,* because the government was not attempting to impose those penalties. We find that those cases are relevant here only in considering the propriety of § 6651(a)(1) penalty.

We are similarly unpersuaded by *Wolfe v. United States, supra.* Although that

opinion discussed the same penalties at issue here, and stated generally that economic difficulties did not excuse the taxpayer from liability for the §§ 6651(a)(2) and 6656(a) penalties, the court made no mention of the regulations relied upon here by the debtor. Thus, the case does little to refute the debtor's claim that financial difficulties may constitute reasonable cause as explicated by the regulations.

In short, we conclude that the debtor has made a sufficient showing that its financial situation was such that its business would have been irreparably injured or terminated had it paid or deposited the taxes in full on the due date, in other words, that it would have imposed an undue hardship on the taxpayer. Therefore, it has shown reasonable cause for its failure to pay and that the penalty was improperly assessed.

Accordingly, the penalties assessed under §§ 6651(a)(2) and 6656(a) only should be forgiven and the government's claim against the estate disallowed *pro tanto*, while the penalty assessed under § 6651(a)(1) should be allowed. Upon submission, an order consistent with this opinion will be entered.