**FRAN CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97 Civ. 0091(CLB).**

United States District Court,
S.D. New York.

Feb. 27, 1998.

Gerard Amalfitano, Birbrower Montalbano Condon & Frank PC, New City, NY, for Plaintiff.

Sarah Thomas, U.S. Attorney's Office, Southern District of NY, New York City, for Defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

Before this Court in this action to refund tax penalties, is a motion by the Defendant, dated November 17, 1997, and a cross-motion by the Plaintiff, dated January 16, 1998, each seeking summary judgment pursuant to Fed. R.Civ.P. 56. Oral argument was heard on February 20, 1998 and decision reserved.

### Background

The facts underlying this case are undisputed. In 1993 and 1994, Fran Corp. ("Plaintiff") was an electrical contractor doing business as All Bright Electric, Inc. Between April 1, 1993, and June 30, 1994, Plaintiff failed to timely withhold and pay federal income tax, social security tax and Medicare tax ("employment taxes") from the wages and salaries of its employees. The Plaintiff concedes that during this time it did pay various other creditors, including its employees and its primary suppliers. The Government concedes, and this Court agrees, that during its period of tax delinquency, Plaintiff was undergoing severe financial difficulties. At least some of these difficulties can be attributed to disputes with two separate customers (one of which was the State of New York) in 1992 which had resulted in the withholding from Plaintiff of progress payments for ongoing projects. By not paying the taxes when due, Plaintiff avoided being cast in default, and was able to complete the projects, and ultimately to pay its taxes, interest and penalties, and remain in business following resolution in its favor of the two customer disputes.

Of course, Plaintiff's business choice in this regard had consequences. Over a period of five quarters, from the second quarter of 1993 to the second quarter of 1994, Plaintiff accumulated a total tax deficit of $252,117.49. The Internal Revenue Service ("IRS") assessed civil penalties against Plaintiff in the

amount of a $6,327.63 penalty for failure to file returns pursuant to 26 U.S.C. § 6651(a)(1); a $12,768.77 penalty for failure to pay taxes pursuant to 26 U.S.C. § 6651(a)(2); and a $52,654.32 penalty for failure to deposit taxes pursuant to 26 U.S.C. § 6656(a). Plaintiff paid the penalties by October, 1995, and filed this action to obtain a refund.

Again, it should be emphasized that all of these material facts are undisputed. As Plaintiff puts it, "there remains no material issue of fact that would preclude the granting of summary judgment .... [and] both Plaintiff and Defendant are willing to abide by this Court's decision on the law." Plaintiff's Mem. at 7.

### Discussion

#### A. The statutory scheme

The narrow question we are asked to address in this case is whether Fran Corp.'s decision not to pay its taxes constitutes "wilful neglect," or whether the circumstances which precipitated that decision represent "reasonable cause" as those terms are defined in 26 U.S.C. §§ 6651(a)(1), 26 U.S.C. §§ 6651(a)(2) and 26 U.S.C. § 6656(a). These three Code provisions provide for the assessment of various penalties against taxpayers who are untimely in their compliance with the tax laws. Essentially, they provide as follows:

- Title 26 U.S.C. § 6651(a)(1) prescribes the penalties for the failure to file tax returns in a timely fashion;
- Second, § 6651(a)(2) prescribes the penalties for failure to pay the amount of tax due in a timely fashion; and
- Third, Title 26 U.S.C. § 6656(a) prescribes the penalties to be assessed for a taxpayer's failure to deposit federal employment taxes with a government depository in a timely fashion.

All three of these provisions, in exactly the same language, allow a taxpayer to avoid

paying penalty assessments if it can show that the failure was *"due to reasonable cause and not due to willful neglect."* See 26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656(a) (emphasis added).

The terms "reasonable cause" and "willful neglect" are given an interpretive gloss by the Treasury Regulations, which provide in pertinent part:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161–1(b) of this chapter) if he paid on the due date....

26 C.F.R. § 301.6651–1. "[U]ndue hardship" as used in the above context, is defined as:

> [M]ore than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date .... If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

26 C.F.R. § 1.6161–(1)(b).

#### B. Case law

In *Brewery, Inc. v. United States,* 33 F.3d 589 (6th Cir.1994) the Sixth Circuit seems to have addressed the precise question confronting us here. In that case, a restaurant decided to remodel, and incurred in the process huge cost overruns,[1] which ultimately resulted in operating losses and negative cash flow. The restaurant failed to pay its taxes, was assessed penalties by the IRS, and sued for a refund on the grounds that its failure to pay represented "reasonable cause" rather than "wilful neglect" under § 6651(a) and § 6656(a).

---

1. The cost overruns resulted from (1) the bankruptcy of an adjacent property owner who had agreed to share the sewage improvement costs of the project; and (2) the local municipality's decision to renovate a bridge directly in front of the restaurant, which decision deprived the restau-

rant of approximately 50% of its projected revenues. ·*Brewery,* 33 F.3d at 591. Though the *Brewery* court chose not to focus on this issue, both of these causes arguably would have been foreseeable "in the exercise of ordinary business care and prudence." 26 C.F.R. § 301.6651–1(c).

The Sixth Circuit flatly rejected this contention. Relying on the requirement that the "nature of the tax which the taxpayer has failed to pay" should be considered in determining whether "reasonable cause" exists, see 26 C.F.R. § 301.6651–1(c)(2), the court distinguished between circumstances that may constitute reasonable cause for nonpayment of income taxes as opposed to nonpayment of employment taxes that are withheld from an employee in a trust exclusively for the Government. Brewery, 33 F.3d at 592. According to the court, when the unpaid taxes are withheld employment taxes, the circumstances that are necessary to establish reasonable cause must be "particularly compelling."[2] Id. Thus, the court held that "financial difficulties can never constitute reasonable cause to excuse the penalties for non-payment of withholding taxes by an employer." Id. (quotation omitted).

█ Pointing to Brewery, Defendant in this case apparently urges a rule that financial difficulties, regardless of their cause and severity, can never justify the recovery of penalties under § 6651 and § 6656. To the extent that the Brewery opinion articulates such a rule, we decline to follow it. Such a per se approach would render meaningless the terms "reasonable cause" and "willful neglect," which clearly invite inquiry into the circumstances underlying a taxpayer default. A per se rule would also be inconsistent with the Treasury Regulations, which provide that:

[C]onsideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax....

26 C.F.R. § 301.6651–1. This consideration extends to such factors as whether a taxpayer "incurs lavish or extravagant" expenses, or "invests funds in speculative or illiquid assets," or instead "made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability," id., as well as to the "undue hardship," id., and "substantial financial loss" see 26 C.F.R. § 1.6161–(1)(b), factors previously mentioned. These factors quite obviously call for an inquiry into reasonableness, rather than a per se rule.[3]

Indeed, rejection of a per se rule would seem to be required by the Supreme Court's decision in United States v. Boyle, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). In Boyle the Court reversed a district court's decision which had refunded penalties to a taxpayer whose failure to file was caused by the erroneous advice of counsel. Although acknowledging that reliance on an attorney is generally reasonable, and would therefore usually come within the Treasury Regulations definition of "ordinary business care and prudence," the Court went on to state that "one does not have to be a tax expert to know that ... taxes must be paid when they are due." Boyle, 469 U.S. at 241. Accordingly, the Court held that reliance on the erroneous advice of counsel is not "reason-

2. Plaintiff criticizes the Defendant's invocation of the Brewery court's "particularly compelling" standard as "pure invention." According to Plaintiff, the Brewery court "improperly imported ... the logic ... of sections 7501 and 6672 to impose, without any authority," a "heightened" standard to refund demands made under § 6651 and § 6656. See Def. Mem. at 16 (emphasis in original). This Court declines to address the propriety of the Brewery court's holding that "particularly compelling" circumstances are required to justify failure to pay employee withholding taxes, as unnecessary to our decision. We do note, however, that contrary to Plaintiff's assertions, there would seem to be considerable regulatory authority for that standard in 26 C.F.R. § 301.6651–1(c)(2) which states unequivocally that "circumstances that might constitute reasonable cause for the nonpayment of income taxes may not constitute reasonable cause for failure to pay over" taxes withheld from the employee on behalf of the Government.

3. See In re Pool & Varga, Inc., 60 B.R. 722 (Bankr.E.D.Mich.1986) ("Neither the statute nor the regulations exclude the possibility that the taxpayer's financial difficulties may constitute reasonable cause. Instead, a fair reading of the regulations leads to just the opposite conclusion."); In re Arthur's Industrial Maintenance, Inc., 1992 WL 132563 at *8 (Bankr.W.D.Va. 1992) ("a taxpayer's financial difficulties may, in appropriate circumstances, constitute reasonable cause"), aff'd 1993 WL 79206 (W.D.Va.).

able cause" for a late filing under § 6651(a)(1). *Id.* at 252.

Although factually inapposite to our case, the *Boyle* decision teaches that under § 6651 and § 6656 the appropriate inquiry is as to the reasonableness of the taxpayers actions. Indeed, citing to the Regulations calling on aggrieved taxpayers to demonstrate "ordinary business care and prudence" to receive a refund, the Court stated:

> Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing penalty.... A taxpayer seeking a refund must therefore prove that his failure to file ... was the result neither of carelessness, reckless indifference, nor intentional failure."

*Id.* at 246 n. 4. Again, this approach obviously assumes that the proper approach under § 6651 and § 6651 is an inquiry into the reasonableness of a taxpayer's actions, rather than application of a *per se* rule.[4]

The validity of our reading of *Boyle* is confirmed by the decision of our Court of Appeals in *Gerald B. Lefcourt, P.C., v. United States*, 125 F.3d 79 (2d Cir.1997). There, the IRS imposed penalties on a law firm under Title 26 U.S.C. § 6721(e) for failure to comply with the $10,000 cash reporting requirements of Title 26 U .S.C. § 6050I. The law firm sued to recover the penalties under 26 U.S.C. § 6724(a), which in identical language to that of § 6651 and § 6656 provides that "no penalty shall be imposed ... with respect to any failure if it is shown that such failure is *due to reasonable cause and not to willful neglect." See Lefcourt*, 125 F.3d at 83.

Drawing an analogy to § 6651 and § 6656, and citing to *Boyle's* discussion of "wilful neglect," our Court of Appeals applied the "reasonable cause"/"wilful neglect" standard, to hold that the law firm's asserted justification for its failure to file—namely claims of attorney privilege and violation of the client's right to counsel—did not represent reasonable cause for its non-compliance "on the

facts presented" by the case. *Id.* at 88. This approach is simply irreconcilable with a *per se* rule that financial difficulties can never justify a penalty refund under § 6651 and § 6656.

### C. Application of the law to the facts of this case

Summary judgment is appropriate in this case. While some courts have held that the inquiry under § 6651 and § 6656 is predominantly a factual question requiring a jury trial, *see Candy's Tortilla Factory v. United States*, 1997. WL 732587 (D.Colo.1997), the *Boyle* Court made clear that "[w]hether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a question of law." 469 U.S. at 249 n. 8.

In this case, as a matter of law, and as a matter of fact, Plaintiff has failed to sustain its "heavy burden of proving both (1) that the failure did not result from 'wilful neglect,' and (2) that the failure was 'due to reasonable cause.'" *Boyle*, 469 U.S. at 245.

Critically, the following undisputed facts were established through discovery. Throughout the period of Fran Corp.'s financial distress, its President Mr. Howard Hellman continued to have the company pay to him the sum of $3500.00 per month as rent for a building. *See* Plaintiff's Rule 56.1 Statement at ¶ 21; Hellman Aff. ¶ 44. When examined in isolation, the monthly $3,500 rental payments to Mr. Hellman (amounting to as much as $52,000 over the five quarters in which Fran. Corp. was delinquent) might seem reasonable. As Plaintiff argues, the fact that "Fran Corp.'s rent is paid to an affiliate does not mean that it was not an ordinary and necessary business expense." Hellman Aff. ¶ 44. However, when one considers that during this very same period Mr. Hellman owed to Fran Corp. the sum of $148,636.89 in the form of a personal loan taken from the company in 1991, the monthly

---

4. As a policy matter, this makes sense. The issue exists only with respect to *penalties,* rather than the tax itself. The purpose of a penalty is to deter wilful conduct considered undesirable. Surely Congress did not intend to impose penalties on a taxpayer whose failure to pay taxes in a timely fashion was the result of extreme financial difficulties which were caused through no fault of the taxpayer.

rental payments to him cannot be justified while trust funds were being withheld from the Government. *See* Hellman Aff. ¶¶ 44–45 (acknowledging personal loan and monthly rental payments).

The Treasury Regulations speak directly to these circumstances. It is clear here that by extending to Mr. Hellman a personal loan, Fran Corp. invested in a "speculative" and an "illiquid" asset. 26 C.F.R. § 301.6651–1(c). Not only did Fran Corp. fail to make "reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability," it all the while paid substantial monies (at least $3500 per month, not counting whatever salary was paid to top management) when it was clearly aware that "the remainder of [its] assets and estimated income [would] be insufficient to pay [its] tax." *Id.* Such conduct is dispositive evidence that Fran Corp. failed to exercise "ordinary business care and prudence in providing for payment of [its] tax liability." *Id.*

There is also evidence that Fran Corp. incurred "lavish" and "extravagant" expenses, *see* 26 C.F.R. § 301.6651–1(c), in the leasing of what appears to be a fleet of various vehicles and in its accrual of not inconsiderable entertainment expenses during the very period of its financial hardship. *See* Hellman Aff. at ¶ 43. Mr. Hellman claims that the entertainment was "nominal," though the expenses amounted to $11,298.25 in 1993 and $4,914.53 in 1994. He further argues that such expenses "contribute[d] directly to the continued generation of income," for Fran Corp. though there is no evidence in the record that the thousands of dollars spent on "golf outings," "hockey tickets," or "dinner dances," or indeed the $610.26 spent for repairs to a Porsche ever contributed directly to the bottom line of Fran Corp.'s business as an electrical contractor.[5] *See* Hellman Aff. at ¶¶ 42–43 and *see* 1993 Ledger at 0000335–0000337,

0000329; Plaintiff's Rule 56.1 Statement at ¶ 20–24.

It is of no matter that the sum total of all these monies would not represent an amount sufficient to dispose of Fran Corp.'s total tax deficit of $252,117.49 (though repayment of the loan to Mr. Hellman together with efforts to develop business on the telephone rather than on the golf course would have gone a long way toward doing so). Undoubtedly, Plaintiff's severe financial difficulties were the proximate cause of its failure to pay its taxes. Yet, in the circumstances which precipitated those difficulties, as well as in the allocation of scarce assets during its lean period, the Court finds that Fran Corp. failed to exercise "ordinary business care and prudence in providing for payment of [its] tax liability." 26 C.F.R. § 301.6651–1(c). Timely payment of the withheld taxes in Fran Corp.'s situation would not, as a matter of law, have resulted in the kind of "substantial financial loss" *see* 26 C.F.R. § 1.6161–(1)(b), which the Regulations require as the "undue hardship" necessary for a showing of "reasonable cause." 26 C.F.R. § 301.6651–1(c); 26 U.S.C. § 6651(a) and § 6656(a). As the Supreme Court emphasized in *Boyle*, "Congress obviously intended to make absence of fault a prerequisite to avoidance" of penalties. 469 U.S. at 246 n. 4. It cannot be said that Plaintiff in this case was without fault. Instead, the Court concludes that Fran Corp.'s failure to file and pay its taxes in a timely fashion was the result of either "carelessness, reckless indifference, [or] intentional failure." *Boyle*, at 246 n. 4.

As a final matter, the Court notes that our rejection of a *per se* rule does not imply a belief that most cases brought under § 6651 and § 6656 are incapable of resolution absent jury trial. To this Court, it is difficult to conceive of a precise set of circumstances, where as a matter of law, financial difficulties

---

5. Plaintiff would have this Court assume that its failure even to file tax returns was a function of its dire financial straits as part of the relief it seeks is a refund of the $6,327.63 penalty for failure to file its returns under § 6651(a)(1). This borders on the absurd in light of the expenses listed above. Indeed, circumstances where financial difficulties alone could constitute the "reasonable cause" necessary to justify a

refund of penalties imposed for failure merely to file tax returns are hard, if not impossible to imagine, despite the statutory and regulatory language which suggest that such circumstances must exist. *See In re Pool & Varga, Inc.*, 60 B.R. 722 (Bankr.E.D.Mich.1986) ("financial difficulty or inability to pay is not a sufficient basis for failure to file one's tax return").

standing alone would justify a finding of reasonable cause, absent some unforeseeable intervening factor such as *force majeure*.[6] Certainly this is not such a case. In our view, the statutory penalties scheme of § 6651 and § 6656 and the Regulations, was intended to guard against moral hazard of precisely the kind engaged in here. In the instant circumstances, in which the taxpayer's conduct at the very least manifests casual disregard for its obligations to the Government, the Court concludes as a matter of law that the failure to file and pay taxes was the result of wilful neglect rather than reasonable cause.

The Court grants the Defendant's motion for summary judgment, and denies the Plaintiff's motion. The Clerk shall file a final judgment.

---

**6.** It is true that a number of courts have held as a matter of law that the threat of insolvency constitutes an undue hardship, warranting a finding of reasonable cause for nonpayment of taxes. *See In re Arthur's Industrial Maintenance*, Inc., 1992 WL 132563 (Bankr.W.D.Va.1992), *aff'd* 1993 WL 79206 (W.D.Va.); *In re Pool & Varga, Inc.*, 60 B.R. 722 (Bankr.E.D.Mich.1986); *Glenwal–Schmidt v. United States*, 1978 WL 4527 (D.D.C. 1978). These cases, however, none of which seem to present the recklessness so manifest here, are clearly distinguishable on their facts. To the extent that they are not, this Court declines to follow them.