**NORWALK LIQUIDATING, INC.,
fka Norstat, Inc., Plaintiffs,**

v.

**UNITED STATES of America,
Defendants.**

**No. 1:00CV557.**

United States District Court,
N.D. Ohio,
Eastern Division.

June 21, 2001.

William Travis McIntyre, Brown, Bemiller, Murray & McIntyre, Mansfield, OH, for plaintiffs.

Lydia D. Bottome, United States Department of Justice, Tax Division, Washington, DC, for defendants.

*MEMORANDUM OPINION* (Resolving Doc. Nos. 20, 21)

DOWD, District Judge.

This matter is before the Court on cross motions for summary judgment on behalf of the Plaintiff Norwalk Liquidating, Inc. ("Norwalk") and Defendant United States of America ("U.S.") (Docket Nos. 20 & 21). The Court also has before it response briefs of each of the parties (Docket Nos. 22 & 23), and a reply to plaintiff's response to U.S.'s motion for summary judgment (Docket No. 24). For the reasons that follow, the motion for summary judgment of the plaintiff Norwalk is denied and the motion for summary judgment of the defendant U.S. is granted.

## *I. FACTUAL BACKGROUND*

Norwalk, formerly known as Norstat, is a manufacturing company with its primary place of business in Mansfield, Ohio. Norwalk has operated since 1974, and typically employed in excess of 150 people during that time. In 1993 Norwalk began to have financial difficulties. These financial troubles continued for the next four years as Norwalk tried to market its business for a possible sale to a purchaser.

Starting in 1994 the plaintiff was notified by an agent of the defendant, the Internal Revenue Service ("IRS"), that the plaintiff was past due on payments of withholding

social security taxes and had failed to deposit these taxes pursuant to 26 U.S.C. §§ 6651(a)(2) & 6656. The amount owed to the IRS, including penalties and interest, came to approximately $1,300,000. The penalties assessed for failure to deposit and failure to pay quarterly tax liabilities were for the period starting January 1, 1994 and ending December 31, 1997. The IRS also assessed penalties for failure to timely file quarterly employment tax returns pursuant to 26 U.S.C. § 6651(a)(1) for the two periods ending September 30, 1994 and June 30, 1997. Throughout the four year period, Norwalk continued to pay off its debt to the IRS in periodic installments. Finally, at the end of 1997 the balance of the debt was paid in full, approximately $1.3 million.

While Norwalk was in the process of paying off the debt to the IRS, an agent of the IRS, Wayne Wilson, the President of Norwalk, Chandler Stevens, and the Vice President of Operations at Norwalk, Mike Stevens, were all in communication. The IRS knew that Norwalk was liquidating its assets in order to pay the IRS. The IRS was patient with Norwalk during this liquidation process; however, at no point was there a formal agreement, i.e. written receivership plan, between Norwalk and the IRS.

On April 30, 1998 the plaintiff made a formal complaint to the IRS. Norwalk argued that it deserved a refund and abatement of the penalties and interest assessed against it during the time it was repaying the IRS. Norwalk has two claims. The basis for Norwalk's first claim is that it had "reasonable cause" for the late payments, under the exception for failure to deposit taxes, under 26 U.S.C. §§ 6651(a)(1) & (2) and 6656. Norwalk's second claim asserts that the IRS incorrectly applied Norwalk's payments so as to maximize the penalties incurred. This oc-

curred because the IRS had not allocated enough of Norwalk's payment to the current liabilities. This action by the IRS caused Norwalk to incur additional penalties of $292,625.23. For these two reasons Norwalk argues it should be exempt from paying the penalties and interest associated with the liability.

On April 6, 1999, and again on November 12, 1999, these claims were disallowed by the IRS. Following these decisions by the IRS, Norwalk initiated this suit on March 1, 2000, requesting a refund of $292,625.23, the penalties accrued during the payment period. The U.S. answered on May 2, 2000. Then on February 2, 2001 and February 5, 2001 the U.S. and Norwalk, respectively, filed cross motions for summary judgment, asserting that there are no genuine issues of material fact in dispute and they each deserve judgments as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). *See, e.g., U.S. v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985) and cases cited therein. The Court's favorable treatment of facts and inferences, however, does not relieve the nonmoving party of the responsibility "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judg-

ment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party satisfies his or her burden to show an absence of evidence to support the nonmoving party's case, *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548, the party in opposition "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the showing required of the nonmoving party by Rule 56 does not go so far as to require that all opposition evidence be in a form admissible at trial, the rule does require the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves...." *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. General averments or conclusory allegations of an affidavit, however, do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Furthermore, unsworn statements and affidavits composed of hearsay and non-expert opinion evidence, "do not satisfy Rule 56(e) and must be disregarded." *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–69 (6th Cir.1991) (quoting *State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir.1979) and citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts ... earlier deposition testimony." *Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)).

On a motion for summary judgment, the Court will consider "[o]nly disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. Non-material facts will not be considered. Neither will the judge attempt to weigh the material evidence or determine its truth. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505. The judge's sole function will be to determine whether there is a genuine issue for trial such that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (Citations omitted).

Where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548 (equating the standard for judgment as a matter of law under Rule 50(a) with the summary judgment standard of Rule 56). If the evidence is "merely colorable," or is "not significantly probative," the Court may decide the legal issue and grant summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (*per curiam*) and *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505.

## III. ARGUMENTS RAISED

### A. Norwalk's Arguments

First, Norwalk claims that under 26 U.S.C. §§ 6651(a)(1) & (2), and 6656(a) it should be allowed to avoid the penalty assessments for failure to pay the trust fund tax because its failure was "due to reasonable cause and not willful neglect."[1] The plaintiff uses 26 C.F.R. § 301.6651–1(c)(1) to define for the Court what is "reasonable cause":

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid on the due date.

The plaintiff then cites 26 C.F.R. § 1.6161–1(b) to define "undue hardship" as:

> [M]ore than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date ... If a market exists, the sale of property at the current market price is not ordinarily considered a resulting hardship.

Norwalk acknowledges that the controlling law for the Sixth Circuit is *Brewery, Inc. v. U.S.,* 33 F.3d 589, 592 (6th Cir.1994) ("financial difficulties can never constitute reasonable cause for non-payment of withholding taxes by an employer"). Nevertheless, Norwalk argues that its facts are very different from the *Brewery* case and that the analysis employed by the Sixth Circuit was flawed.

Norwalk argues that the Court should follow the Second Circuit's analysis in *Fran v. U.S.,* 998 F.Supp. 296 (S.D.N.Y. 1998) (holding that the taxpayer's conduct of non-payment of trust fund taxes to the IRS, at the very least, manifested casual disregard for its obligations to the Government, and concluding, as a matter of law, that the failure to file and pay taxes was the result of willful neglect rather than reasonable cause). This would distinguish Norwalk's case from the bright line rule in *Brewery.* The *Fran* court argued that if *Brewery* suggests "that financial difficulties, regardless of their cause or severity, can never justify the recovery of penalties under 6651 and 6656 ... [then] we decline to follow it." *Fran,* 998 F.Supp. at 298. Norwalk explains that the plaintiff in *Fran* lost because it accrued excessive entertainment expenditures while not paying its taxes to the IRS. This fact doomed the plaintiff in the *Fran* case because these financial expenditures were considered unreasonable by that court. Norwalk argues that because it did not accrue such frivolous expenses and was prudent with its spending, i.e. working on a bare-bones status, it should be held that it had reasonable cause in non-payment of the trust fund taxes to the IRS.

Norwalk also argues that this Court should ignore *Brewery* and follow the

---

1. The Court is somewhat baffled by this argument. The plaintiff did not make this claim in its complaint; rather, the U.S. first mentioned it in its summary judgment motion. Nonetheless the Court will address it.

Third Circuit's opinion in *East Wind Industries v. U.S.*, 196 F.3d 499 (3rd Cir. 1999), which held that the district court erred by applying the bright line test of *Brewery,* and that the taxpayers were entitled to an abatement of penalties on their delinquent employment taxes because nonpayment was due to reasonable cause and not willful neglect. In *East Wind,* the U.S. tried to convince the court to follow the *Brewery* decision, but it declined. The Third Circuit stated: "[A] bright line rule when a tax payment is delayed due to financial difficulties is inconsistent with Congress' creation of a 'reasonable cause' exception." *East Wind,* 196 F.3d at 507. The Third Circuit cites the *Fran* decision in its opinion.

Norwalk argues that, if the Court follows the *Brewery* approach, such an analysis would have a negative impact on both Norwalk and the IRS. By immediately liquidating, at the 1994 market rate, Norwalk claims it would have only been able to obtain one-tenth of the price for Norwalk that it did in 1997. Norwalk believes it was acting under the definition for "reasonable cause" in 26 C.F.R. § 301.6651–1(c)(1) in that it "made a satisfactory showing that [it] exercised ordinary business care and prudence in providing for the payment of [its] tax liability and was nevertheless either unable to pay the tax or would suffer undue hardship." By continuing to run a bare-bones business Norwalk was exercising "business care and prudence" to obtain the most money to pay all of its creditors, most importantly the IRS.

Norwalk continues to argue that, if it had paid in a timely fashion, undue hardship would have occurred creating "substantial financial loss, for example, loss due to the sale of property at a sacrifice price." 26 C.F.R. § 1.6161–1(b). Norwalk states that in 1993 there were no offers for the company, and that it took until 1996 for the company to be sold to one of its competitors, generating a revenue of $2 million. This amount allowed the trust fund liabilities to be paid in full.

Norwalk argues that it was able to pay its full liability to the IRS by holding back some of the trust fund tax money. If Norwalk had not done this, a distress sale would have made much of the inventory worthless. Because there was no market until 1996, Norwalk argues that it exercised ordinary business care and prudence in not providing for the payment of its trust fund tax liability because the sale of its property would have been at a "sacrifice price." 26 C.F.R. § 1.6161–1(b). The regulation itself states: "if a market exists, the sale of property at the current market price is not ordinarily considered as resulting from an undue hardship." Norwalk claims there was no market until 1996 as a result of the maintenance of Norwalk as an ongoing business.

Norwalk's second claim [2] is that the IRS erroneously, improperly, and illegally assessed and collected certain tax penalties and interest fees from Norwalk. It claims that the Vice President of Operations, Mike Stevens, was prevented from designating the application of the tax payments. Although these were late payments, Norwalk argues that these tax payments should have been allocated to the trust fund liabilities and not to interest and penalties. Norwalk claims that the U.S. is without support to show that Norwalk's payments were involuntary, and because of

---

**2.** Norwalk's second claim is mentioned in its complaint, but is not addressed in its summary judgment motion. Norwalk finally discusses this claim in its response to the U.S.'s memo in support of summary judgment. It should be noted that the U.S. does address both claims in its summary judgment motion.

this, voluntary payments without levy can be allocated the way the payor designates. Norwalk claims that over 80% of its payments were voluntary, according to Mike Stevens's uncontradicted affidavit, and Norwalk, on one occasion, designated in writing on a check that the payment was to be allocated toward the trust fund liability only. Therefore, Norwalk argues, because its payments were voluntary and it designated in writing on one of the payments, it should have never have accrued the penalties and interest and these monies should now be refunded.

### B. The U.S.'s Arguments

The U.S. has two arguments: the first is that Norwalk did not have reasonable cause for failure to pay the trust fund taxes, and the second is that Norwalk cannot show that the IRS misallocated its payments.

The U.S.'s first argument is that the plaintiff cannot establish that it had reasonable cause for its failure to timely deposit and pay its accruing tax liabilities. The tax code requires an employer to deduct and withhold income and social security taxes from the wages paid to its employees. 26 U.S.C. §§ 3102(a) & 3402(a). It further provides that the amount withheld or collected from the wages paid shall be held in a special "trust" for the U.S. 26 U.S.C. § 7501. These trust fund taxes are for the exclusive use of the U.S. and are not to be used by the employer for any purpose. 26 U.S.C. §§ 3102(b), 3403, 7501(a); Gephart v. U.S., 818 F.2d 469, 472 (6th Cir.1987) (a general manager of a corporation brought action against United States seeking refund of partial payments made on the 100% penalty assessed against him for willful failure to pay over withholding taxes); McGlothin v. U.S., 720 F.2d 6, 8 (6th Cir.1983) (individuals were "responsible persons" within the meaning of the statute governing failure to collect and pay over taxes, or attempt to evade or defeat tax, and willfully failed to pay over funds to Government).

When an employer fails to follow these statutes, then it is subject to penalties under 26 U.S.C. §§ 6656, 6651(a)(1), & 6651(a)(2). The purpose of the penalties is to ensure that the taxes are paid in full and on time to the U.S. The Supreme Court has ruled that the prompt payment of taxes is imperative, and that the penalty statutes help discourage the nonpayment of taxes. See U.S. v. Boyle, 469 U.S. 241, 245, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (Congress placed the burden of prompt filing of tax return on the taxpayer and intended to place upon the taxpayer an obligation to ascertain statutory deadline and then to meet that deadline, except in very narrow range of situations, and failure to make timely filing of tax return is not excused by taxpayer's reliance on an agent, such reliance not being "reasonable cause" for late filing). The U.S. argues that absent such strict penalties the U.S. might become an unwilling partner to a failing business. See Mueller v. Nixon, 470 F.2d 1348, 1351 (6th Cir.1972) (lender's employee was a "person" within statute subjecting to penalty a person who is required and fails to collect, truthfully account for, and pay over employee withholding and social security taxes).

According to the U.S., the controlling law in the Sixth Circuit, Brewery Inc. v. U.S., 33 F.3d 589, 592 (6th Cir.1994), unequivocally established a "bright-line" rule that limits the boundary of "reasonable cause" under 26 U.S.C. §§ 6651(a)(1) & (2), and 6656(a). The Brewery court "conclude[d] that financial difficulties can never constitute reasonable cause for non-payment of withholding taxes by an employer." 33 F.3d at 592. The U.S. argues that the plaintiff's only rationale for non-pay-

ment of the trust fund taxes was that it was in financial difficulties and used the taxes to keep financially afloat. If this is true, then Norwalk is on the wrong side of the bright line rule and its argument fails the *Brewery* standard. The plaintiff's use of trust fund taxes to pay other creditors due to a lack of funds cannot be "reasonable cause for nonpayment" in this Circuit. The U.S. asserts that the plaintiff has shown no other reason for lack of payment besides financial hardship, and therefore, the penalties should not be excused.

The U.S.'s second argument is that the plaintiff cannot show that the IRS improperly applied the payments made by Norwalk. The U.S. argues that while Mike Stevens stated: "Norstat and the IRS during the relevant period of time were engaged in what might be called an informal receivership," Norwalk does not establish that the IRS misallocated the payments. (Affidavit, p. 3)[3]. Stevens also stated that he made an attempt to allocate the payments to the current principal, as opposed to interest or penalty, but was informed that he was not permitted to do so as it would be considered bad faith by the IRS. (Affidavit, p. 3).

The U.S. asserts that a taxpayer who makes voluntary payments to the IRS may designate how to apply the payment. *See Kinnie v. U.S.*, 994 F.2d 279, 286 (6th Cir.1993) (50% shareholder/vice president was a responsible person liable for withholding taxes, and judgment could be entered against responsible people for an amount that exceeded cash on hand of the corporation on the date that the responsible person acquired notice that the corporation had not been paying or remitting withholding taxes). *See also* Rev.Rul. 79–284. The taxpayer has no right to designate, under any circumstance, if a payment is involuntary, and the IRS may

apply payments in the best interest of the U.S. *See In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 799 (9th Cir.1987) (a corporate debtor under Chapter 11 reorganization cannot designate that tax payments be applied first to satisfy corporation's trust fund liabilities). *See also* RevRul. 79–284. A payment is involuntary if "any payment received by agents of the United States as a result of distraint or levy or from any legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Comm'r of Internal Revenue*, 47 T.C. 65, 69, 1966 WL 1102 (1966) (amounts received from notices of levy constitute involuntary payments which the district director has a right to apply as he chooses to outstanding assessments of tax, penalty, and interest). If any payment is made pursuant to a levy, it is involuntary.

The U.S. points to Revenue Ruling 79–284 which states that if the payment is voluntary the designation must be in writing in order to be binding upon the IRS. This rule was reinforced by the Sixth Circuit ruling in *Kinnie*, 994 F.2d at 287, stating that a designation of payment for employment tax liability be in writing. *See also Klenner v. U.S.*, No. 95–CV–70503–DT, 1996 WL 512325, *2 (E.D.Mich. June 4, 1996) (the court observing that the well established law in this circuit, *Kinnie*, requires that the taxpayer must indicate with written instructions that it wishes to designate voluntary payments to the government). The *Kinnie* court explained that the purpose of this rule was to stop litigation arising from what might be orally stated at certain times. and places. The plaintiff admits that, but for one check, there was no writing memorializing any request to the IRS for designation of pay-

---

3. This affidavit is contained in Doc. No. 21.

ments. (Requests for Admission # 1)[4]. When the plaintiff was also asked to produce any documents pertaining to the claim that it designated payments on a check or other document, none were produced. Therefore the U.S. argues that, because the plaintiff did not designate in writing how it wished its voluntary payments to be allocated, its claim that the IRS illegally misallocated its payments cannot be substantiated.

## IV. DISCUSSION

### Issue A—Whether the plaintiff had reasonable cause for its failure to timely deposit and pay its accruing tax liability.

■ The Sixth Circuit has been very clear as to what it does not consider to be a reasonable cause for failure to pay a tax liability. In Brewery, Inc. v. U.S., 33 F.3d 589, 592 (6th Cir.1994), the Sixth Circuit set down a bright line rule that financial difficulties can never constitute reasonable cause to excuse penalties for nonpayment of withholding taxes by an employer. This ruling is the valid and binding precedent in the Sixth Circuit. The plaintiff contends that its facts are distinguishable from Brewery, but this Court does not agree.

■ The plaintiff used the trust fund tax monies to help sustain itself during its "downward spiral" of financial difficulties. It offers no other reason for why it used the funds besides that it needed the money to help maintain itself during declining fiscal days. Its plea that it did not use the money for "corporate perks," like those in Fran, but only to keep its doors open for four years until it could get a fair market price is not relevant. No matter how one looks at the facts in this case, the plaintiff falls on the side of using the trust fund taxes to sustain itself during financial diffi-

culties, which is not "reasonable cause" in this Circuit.

The plaintiff asks this Court to ignore the Sixth Circuit precedent in Brewery and analyze the factual situation using the schemes in Fran and East Winds. But this is exactly the reason the court system is governed by the rule of stare decisis. See Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (in dicta stating that stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process); Vasquez v. Hillery, 474 U.S. 254, 265–266, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (stare decisis is the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion). This Court is bound by the decisions of the Sixth Circuit in regard to its interpretation of "reasonable cause" under 26 U.S.C. §§ 6651(a)(1) & (2), and 6656(a). This rule remains true even if there are splits of opinion between other circuits and the controlling circuit. Therefore, the bright line rule that financial hardship can never establish reasonable cause for nonpayment of trust fund taxes is applicable.

### Issue B—Whether the IRS improperly applied Norwalk's payments.

■ The plaintiff argues that Mike Stevens was prevented from designating Norwalk's tax payments for fear, originating from a warning by the IRS, that continued activity would result in forced collection. Even if this allegation is true, and Mike Stevens had written a memo on another check, the IRS would have then had the option to put a levy on the property, mak-

4. This Requests for Admission is contained in Doc. No. 20.

ing the payments from that moment forward involuntary, and not subject to designation by the plaintiff. Even though this incident did not occur the plaintiff still cannot offer any evidence to substantiate that it followed Revenue Ruling 79–284 and designated, in writing, how it wished its voluntary payment to be allocated in order to bind the IRS. Therefore Norwalk cannot prove the IRS misallocated its payments. Because the plaintiff did not designate in writing how it wanted its payments allocated, the IRS had every right to allocate the payments to the maximum benefit of the United States.

Even taken in the light most favorable to Norwalk, as it argues, that it designated in writing on one check that it wished payment to be allocated to the "tax liability only," and was told by the IRS to cease writing that on the checks, the policy behind *Kinnie* is clear: the voluntary designation must be in writing. This means all payments must be so designated if a formal relationship is not established. At the very best, Norwalk is only owed the amount designated from that one check. While the latter part of this argument is based upon the affidavit of Mike Stevens, but not substantiated with the actual check, Norwalk should have formally written a letter to the IRS, in accordance with Revenue Ruling 79–284, stating that it wished to allocate its voluntary payments to the tax liability only. This simple measure might have given the plaintiff the evidence needed for this Court to rule in its favor about that one check. But because the precedent in the Sixth Circuit is clear that the voluntary designation must be in writing, this Court rules that the informal receivership was not enough to establish that the IRS misallocated the plaintiff's payments.

## V. CONCLUSION

While the Court is sympathetic to the taxpayer in the particular circumstances and unusual facts set forth within this case, the Court finds no genuine issue of material fact that would negate the motion for summary judgment of the United States. The controlling law set forth in *Brewery, Inc. v. U.S.* applies and the United States is entitled to judgment as a matter of law. Therefore, the defendant's motion for summary judgment (Doc. No. 20) is granted. Norwalk's motion for summary judgment (Doc. No. 21) is denied.

IT IS SO ORDERED.